### EDWARDS v. MERCANTILE TRUST CO. et al.

#### (Circuit Court, S. D. New York. July 25, 1903.)

1. PARTIES—SUIT IN FEDERAL COURT—NECESSITY OF JOINING FOREIGN CORPORATION.

    The fact that by an agreement between two corporations certain stocks were to be held by one as collateral security for bonds to be issued by a third corporation does not render the latter a necessary party to a suit to determine the ownership of the stocks as between the first and second corporations, so as to defeat the jurisdiction of a federal court where the third corporation is outside the jurisdiction and cannot be brought in, since the court has power to protect its interests under the pledge agreement, whichever party to such agreement may be decreed the owner of the security.

2. CORPORATIONS—SUIT BY STOCKHOLDER—CONDITIONS PRECEDENT.

    It is not a condition precedent to the maintenance of an action by a stockholder against the corporation and another to set aside an alleged fraudulent agreement made between the defendants that complainant should offer to return property acquired by the corporation through such agreement, or show an effort to procure its return by the corporation, where he alleges a demand upon the corporation to institute the suit, and its refusal.

3. SAME—COMPLIANCE WITH EQUITY RULE 94—SUFFICIENCY OF ALLEGATION.

    Allegations in a bill filed by a stockholder 'against the corporation and another to set aside an agreement between them, charged to be fraudulent, that complainant demanded of the corporation "that it institute the suit set forth in this your orator's bill of complaint" against its co-

defendant, but that the corporation has refused and neglected to bring such suit, is a sufficient compliance with equity rule 94.

4. SAME—LACHES—ALLEGATIONS IN EXCUSE OF DELAY.

In a bill by a stockholder against the corporation and another to set aside an alleged fraudulent agreement through which, as charged, the corporation was deprived of income and prevented from paying dividends, a general allegation that complainant was uninformed as to the matters set forth until a few weeks prior to the filing of the bill is insufficient to excuse a delay of eight years after the making of the agreement, and avoid the defense of laches, and especially where facts shown by the bill were of such a character as should have put him on inquiry.

5. SAME—PLEADINGS—ALLEGATIONS OF FRAUD.

In a bill by a stockholder against the corporation and another to set aside an alleged fraudulent agreement, made pursuant to a state statute, and through which, as charged, the corporation was deprived of income and prevented from paying dividends, allegations that the statute was unconstitutional as defendants knew, and that it was the company's duty to resist it, but that with this knowledge, and with full knowledge of the effect of proceeding under it, defendants took advantage of the unconstitutional statute, and perpetrated a fraud on the company and its stockholders, etc., followed by a particular statement of what was done, are sufficient allegations of fraud as against a demurrer.

In Equity. On demurrer to bill by defendant the Mercantile Trust Company. See 121 Fed. 203.

C. Godfrey Patterson (Henry Major, of counsel), for complainant.

Alexander & Green, for defendant Mercantile Trust Co.

RAY, District Judge. This is a suit for equitable relief instituted by the complainant on behalf of himself and such other interested persons as may join as an income bondholder and stockholder respecting the defendant Bay State Gas Company of Delaware, and seeks to enjoin the Mercantile Trust Company from selling, hypothecating, or voting upon 15,000 shares of the capital stock of Bay State Gas Company claimed by the complainant to have been since its issuance the property of the defendant Bay State Gas Company of Delaware; also the appointment of a receiver of the property of the defendant Bay State Gas Company of Delaware, including the said shares of stock and all dividends thereon; and for the judgment of this court decreeing the ownership, as between the parties to this action, of the said shares of stock, and that the same have belonged since the issuance thereof to the defendant Bay State Gas Company of Delaware; and that the possession thereof, and of the dividends paid thereon by the defendant trust company, has been that of a trustee merely, the beneficial interest and ownership being vested in said Bay State Gas Company of Delaware, and that the said Mercantile Trust Company may be required to account therefor as such trustee to a receiver to be appointed herein.

The bill of complaint is voluminous, but its allegations may be summarized as follows, viz.:

The citizenship and residence of the complainant, the domicile of defendants and the corporate existence of defendants, the creation of defendant Bay State Gas Company of Delaware, the bonded debt, and the ownership by the complainant of 24 income bonds, of the face

¶ 4. See Equity, vol. 19, Cent. Dig. § 329.

value of $24,000, and of 440 shares of stock, par value $22,000, of the Bay State Gas Company of Delaware, and also the good faith of the complainant in bringing the suit, is first alleged. The bill of complaint alleges the creation on the 2d day of December, 1884, of the Bay State Gas Company of Massachusetts, and that said Company in March, 1885, made an agreement with one J. Edward Addicks to the effect that Addicks should equip and construct a gas manufacturing plant for said company in consideration of the immediate delivery by said company to said Addicks of its bond in the sum of $4,500,000, and of the payment to said Addicks of the sum of $450,000 in addition thereto; the said bond to become payable in 99 years, and the annual interest payable thereon to the holder thereof to be equal to 90 per cent. of the net earnings of the said Massachusetts Company, payable semiannually. The said Massachusetts Company was to deliver its said bond to said Addicks on March 11, 1885. Said Addicks assigned the said agreement and his rights thereunder to the Beacon Construction Company, March 19, 1885, and by separate instrument assigned to the same company the said bond. The Beacon Construction Company constructed and equipped the gas plant, and same was delivered to and accepted by the Massachusetts Company in fulfillment of the Addicks agreement. On the 1st of August, 1889, the Beacon Construction Company assigned the said $4,500,000 bond executed by the Bay State Gas Company of Massachusetts to one Herman G. Mulock in consideration of $5,000,000 paid therefor. About August 13, 1889, said Mulock sold and assigned the said bond to the defendant Bay State Gas Company of Delaware, then bearing the name Peninsular Investment Company, for the consideration of $5,000,000, of which $2,000,000 consisted of the entire issue of income bonds of said gas company, and $3,000,000 in the full-paid capital stock of the defendant Bay State Gas Company of Delaware, which income bonds and stock were thereupon issued and delivered to said Mulock in payment for the said $4,500,000 bond. The covenants of said income bonds are to the effect that the principal thereof is payable on the 1st day of May, 1939, and that interest, not exceeding 7 per cent. in any one year, shall be paid as the net earnings of the defendant Bay State Gas Company of Delaware will pay, such net earnings being such part of the income of the maker of the bond as would be applicable to payment of dividends, and to be reserved and applied to the payment of said interest before and in preference to payment on any other obligation of the obligor company, the payment of which interest is to be a just charge or lien upon said net earnings to the extent aforesaid. The bonds are to be and remain the first preferred obligation of the company, and all payments out of said net earnings of the company shall in all events be made prior to any payments on account of any other obligations. The defendant Bay State Gas Company of Delaware, while holding the $4,500,000 bond of the Massachusetts Company, received interest thereon from the Massachusetts Company all the way from $90,000 in 1889 to $234,950 in the year 1893, and paid therefrom up to May 1, 1893, 7 per cent. interest on the $2,000,000 of its said income bonds, and also paid a dividend of 2 per cent. in 1892, and 1 per cent. in 1893, upon its $5,000,000 of capital stock.

The bill of complaint then avers that the Bay State Gas Company of Delaware, in addition to being the absolute owner of the $4,500,000 bond mentioned, also acquired the ownership of the entire stock substantially of the Bay State Gas Company of New Jersey, and as such stockholder, in control of the New Jersey Company, became the beneficial owner, subject to the terms of the pledges as created by certain trust agreements of the several stocks and securities described therein, as pledged for the benefit of the holders of the Boston United Gas bonds. The ownership of the stock of the New Jersey Company was acquired in the following manner, viz.: The New Jersey Company was created in March, 1889, with a capital of $1,000,000. March 25, 1889, said Addicks and one Dillaway made two agreements with the defendant, the Mercantile Trust Company, dated January 1, 1889, whereby they would purchase the stocks therein described, and transfer the same to the trust company in pledge for the holders of the Boston United Gas bonds therein described, aggregating in face value $10,435,000, upon which the trust company was to issue its trust certificates in connection with said Boston United Gas bonds to be issued by said New Jersey Company. Addicks delivered the stocks to the trust company, which company prior to June 25, 1885, issued said trust certificates and Boston United Gas bonds to the amount of $7,435,000 to Addicks and Dillaway, and also trust certificates and Boston United Gas bonds to the amount of $3,000,000.

The 4,993 shares of stock of the Bay State Gas Company of Massachusetts, mentioned in the trust agreements, were not purchased by Addicks or Dillaway, who never owned them, but same were owned by the Beacon Construction Company, which company was not a party to the trust agreements. Addicks and Dillaway subsequently assigned their title in the stocks pledged by the trust agreements to the New Jersey Company subject to the execution of said trusts, and in consideration thereof the New Jersey Company issued to Addicks and Dillaway 9,950 shares out of a total of 10,000 shares of its own stock, with all rights as to increase of such stock, and said 9,950 shares of stock of the New Jersey Company was afterwards, and on the 9th day of August, 1889, transferred by Addicks and Dillaway to the defendant the Bay State Gas Company of Delaware, in consideration of its issuance to Addicks and Dillaway of $1,995,000 of its capital, and the payment by the defendant gas company of $5,000 cash.

The ownership by the defendant the Bay State Gas Company of Delaware of the $4,500,000 bond is then alleged, as is the passage of an act by the Legislature of the state of Massachusetts known as the "Lyford Act," and the complaint also alleges that the said defendant gas company was then, as the owner of the controlling number of shares of the New Jersey Company, the beneficial owner of the equitable remainder of the pledged stocks held by the defendant the Mercantile Trust Company subject to the execution of the trusts created by said agreement.

The bill of complaint then alleges that the defendant the Mercantile Trust Company knew of the fact that the defendant the Bay State Gas Company of Delaware owned the $4,500,000 bond, as well as the fact that the said bond was an outstanding obligation against the Bay State

Gas Company of Massachusetts. It also alleges that at and before the passage of the Lyford act the defendant the Mercantile Trust Company, and its directors and officers, knew that the said gas company had bought said $4,500,000 bond as an investment, and had issued in payment therefor its income bond to the amount of $2,000,000, and its stock $3,000,000, and had derived large income, being net earnings, wherewith it had met the payments as required to be made for interest on said income bonds and some dividends on its stock, and also knew that said income bonds and stock were in the hands of purchasers thereof for value, and that said income bondholders were entitled to preferential payment from said net earnings by the terms of said bond, which charged the defendant gas company with a trust in relation to the production, protection, and application of said net earnings, and that the defendant trust company also knew that it was the duty of the defendant gas company to possess itself of any property for which said $4,500,000 bond might be exchanged, so as to receive and apply the income therefrom to the payment required to be made on said income bond and to dividends on its own stock.

The bill of complaint then alleges the ownership of said $4,500,000 bond by the defendant the Bay State Gas Company of Delaware, in June, 1893, when the Lyford act was passed by the Massachusetts Legislature, and sets forth such act in full, and also avers that the Bay State Gas Company of Massachusetts then had valuable working plants; that the Lyford act was unconstitutional; that in any event the defendant the Bay State Gas Company of Delaware was entitled to receive the $1,500,000 of stock issued by the Massachusetts Company upon the surrender to it of the $4,500,000 bond, which was thereupon canceled; that the defendant said gas company, and its then directors and officers, without notice to or knowledge of its income bondholders or stockholders, conspired with the defendant the Bay State Gas Company of Delaware, and as a result the $4,500,000 was surrendered by the said gas company and canceled by the Massachusetts Company, who issued $1,500,000 of its stock to the defendant the Mercantile Trust Company, instead of to the defendant the Bay State Gas Company of Delaware, which company, the bill of complaint alleges, was entitled to receive the same, and the defendant the Mercantile Trust Company thereupon issued its certificates founded on said $1,500,000 shares of stock of the Massachusetts Company wrongfully received by the defendant the Mercantile Trust Company, and upon which certificate the New Jersey Company issued $1,300,000 of Boston United Gas bonds, which were then delivered to the defendant the Bay State Gas Company of Delaware, in the place and stead of the $1,500,000 of stock of the Massachusetts Company, which the complaint alleges was illegally received by the defendant the Mercantile Trust Company, without right or consideration, and now retained by it.

The complaint alleges that by these acts the income bondholders and stockholders of the defendant gas company were illegally deprived of the said bond and also of the said $1,500,000 stock of the Massachusetts Company issued in payment for said bond, as well as of the dividend earned and since paid on the stock, the amount of

124 F.—25

which is unknown to the complainant. The Bay State Gas Company of Delaware, since these transactions, has been unable to pay interest on said income bonds or dividends on its stock. The complaint then sets forth certain pretenses alleged to be unfounded and false made by the defendant the Mercantile Trust Company to justify its receipt and retention of the stock of the Massachusetts Company. The bill of complaint then alleges that the receipt by the Bay State Gas Company of Delaware of $1,300,000 of Boston Gas bonds instead of the $1,500,000 of stock .of the Massachusetts Company constituted a fraud upon the defendant gas company and its bondholders and stockholders, by reason of the facts that the stock taken by the said trust company was dividend paying stock, while the Boston United Gas bonds were in effect an increased debt as against the Bay State Gas Company of Delaware, who was liable for all deficiencies growing out of the entire $10,000,000 issue of said Boston United Gas bonds under the terms and trust agreements mentioned. The defendant the Mercantile Trust Company has continued to receive and now receives the dividends declared upon the said stock of said Massachusetts Company which should have been received by the defendant the Bay State Gas Company of Delaware, and it is alleged that said stock is of the actual value of $1,500,000.

The bill of complaint then alleges that the complainant, as a stockholder and holder of income bonds as aforesaid, has demanded of the Bay State Gas Company of Delaware that it bring suit to recover the said $1,500,000 of stock and dividends thereon, but that said gas company has refused to bring such action; whereupon this action is brought by the complainant in his own behalf and in behalf of all others similarly situated.

The bill of complaint then alleges that knowledge of these facts has been but recently acquired, and also alleges certain facts claimed to show the necessity for the intervention by this court to avoid irreparable damages.

The bill of complaint also states that the Bay State Gas Company of New Jersey is a foreign corporation and without the jurisdiction of this court, and that said company has no claim or title respecting the said shares of stock which alone constitute the subject-matter of this suit, and it is alleged and claimed that the presence as a party of the said New Jersey Company, etc., is unnecessary to the determination of this action. It is alleged that this fact appears from the bill of complaint.

The mode, means, and manner through which the defendant the Mercantile Trust Company came into possession of and came to be the alleged owner of the stock in question is alleged in the complaint substantially as follows:

The "Lyford Act," so-called, refers to the $4,500,000 bond dated the 11th day of March, 1885, heretofore referred to, .and is as follows:

"An Act Relating to the Bay State Gas Company.

"Be it enacted as follows:

"Section 1. The charter of the Bay State Gas Company is hereby revoked and annulled and said corporation shall be subject to the provisions of sections 41 to 45 inclusive of chapter 105 of the Public Statutes so far as the same are applicable and subject to the provisions hereinafter contained.

"Sec. 2. The Supreme Judicial Court shall on application made as provided in section 42 of chapter 105 of the Public Statutes, or on application of the mayor of the city of Boston, appoint a receiver of the said Bay State Gas Company who shall hold and distribute the estate and effects of the said company as provided in sections 42 to 45 inclusive of said chapter 105 of the Public Statutes.

"Sec. 3. Sections 1 and 2 of this act shall take effect on the first day of December, in the year 1893, unless the said Bay State Gas Company shall prior to said day procure or cause a certain obligation for $4,500,000, dated the 11th day of March, in the year 1885, and issued by said company as part consideration for a contract for the construction of its works to be legally cancelled and discharged, and shall surrender and deliver the said obligation thus legally cancelled and discharged to the commissioner of corporations.

"Sec. 4. The said Bay State Gas Company may for the purpose of procuring such cancellation and delivery of said obligation issue to the holder or holders of the said obligation upon the said delivery, stock to the amount equal to the excess of the actual market value of the property of said company over $500,000, not including therein any value for its franchises, the said value of said property shall be determined by three disinterested persons to be appointed as commissioners by the Supreme Judicial Court upon application of the said company after notice to the mayor of the city of Boston, who shall be a party to all proceedings before the said commissioners. Stock may be issued under the provisions of this act only after the findings of said commissioners have been approved by the court after due notice to all parties interested and only in the event that the aggregate amount of stock, bonds, notes and other liabilities of said company outstanding at the time of such issue shall not exceed the said value of the property found and approved as aforesaid.

"Sec. 5. It shall not be lawful for the said Bay State Gas Company to issue any stock or bonds or to assume any liabilities or to pay any consideration for or on account of the principal of the said obligation or for the purpose of procuring the cancellation and delivery thereof except as provided in˜this act.

"Sec. 6. Sections 4 and 5 of this act shall take effect upon its passage." Laws 1893, p. 1410, c. 474.

The Bay State Gas Company of Massachusetts, at the time said act was passed, owned valuable property and was engaged in a lucrative business in the city of Boston. Had the repeal of the charter been enforced, and had the assets and effects of the company passed into the hands of a receiver pursuant to said act, the Bay State Gas Company of Delaware would have been in a position to have enforced its remedies as a creditor upon said bond, and could have realized the whole of the face value thereof. The allegation is that the said act was unconstitutional, and to take effect at a future day only in any event. The bill of complaint says that the unconstitutionality of the act was well known to the directors and officers of both defendants, and it was their duty, in the interests of their stockholders and income bondholders, not to surrender the said bond as proposed in the act, but to oppose and resist such surrender or cancellation.

The bill of complaint then alleges in detail that the defendant the Bay State Gas Company of Delaware, through its then directors and officers, in the summer or fall of 1893, without notice to or consent of its stockholders or income bondholders, entered into an unlawful combination and conspiracy with the defendant the Mercantile Trust Company, its then directors and officers, in and by which they agreed to accept and carry into effect the Lyford act; that the Bay State Gas Company of Massachusetts, then controlled by the Mercantile Trust Company, should proceed to have the property appraised,

etc.; and that the said bond for $4,500,000 should be assigned and transferred to the Mercantile Trust Company, which company should deliver same to the Bay State Gas Company of Massachusetts for cancellation, and receive the stock provided for in said act, and that such stock when received should be claimed and held by the defendant the Mercantile Trust Company, as subject to the trust agreements set forth or annexed to the bill of complaint, and should be treated and certified to as sufficient in character and amount to warrant the issuance by the said New Jersey Company of $1,300,000 of its Boston United Gas bonds of the first series, and that thereupon the Mercantile Trust Company should certify said bonds and cause the same to be issued through the New Jersey Company to the defendant the Bay State Gas Company of Delaware, as and for a pretended consideration for its consenting to assign said bond to the said Mercantile Trust Company, and permitting it to receive and keep the $1,500,000 of stock, the subject of this litigation. The said combination, conspiracy, or agreement was then carried out, the details by which it was done being set forth in full, and the said Bay State Gas Company of New Jersey thereupon delivered said $1,300,000 of bonds to the Bay State Gas Company of Delaware, and that company consented to assign and did assign the bond to said trust company for cancellation, and the trust company took and kept, and still has and claims to own, under and pursuant to such agreement, the $1,500,000 of stock, the subject of this litigation.

The trust agreements annexed to the bill of complaint were between J. Edward Addicks and William E. L. Dillaway of the first part, the Mercantile Trust Company of the second part, and the Bay State Gas Company of New Jersey of the third part, and were duly signed and executed by the parties.

This agreement, alleged to have been made in pursuance of a conspiracy, and which was executed, is not presumptively void, but voidable, for the fraud, and must be declared fraudulent and void before it can be said that the title to the $1,500,000 of stock vested in the Bay State Gas Company of Delaware.

Again, here is an unequivocal allegation that the Bay State Gas Company of Delaware and the Mercantile Trust Company agreed between themselves that the certificate should be made to influence the New Jersey Company to issue $1,300,000 of its Boston United Gas bonds, and it follows that the Bay State Gas Company of Delaware, in which the complainant owns stock, etc., induced the New Jersey Company to issue these bonds.

The bill of complaint alleges, as stated, that the 4,993 shares of the stock of the Bay State Gas Company of Massachusetts or Boston, mentioned in the trust agreement, were never issued to or owned by Addicks and Dillaway or either of them, but were owned by the Beacon Construction Company, and, as this company was not a party to the trust agreement, such shares could not be affected by such agreements. As Addicks and Dillaway only assigned their title in the stocks pledged by the trust agreements to the New Jersey Company subject to the execution of the trust, and as they never owned the stock of the Bay State Gas Company of Boston, it is difficult to

see how the New Jersey Company is interested in the litigation unless the mere fact that the New Jersey Company issued $1,300,000 of Boston United Gas bonds on the faith of the certificate of the Mercantile Trust Company, which were subsequently delivered to the Bay State Gas Company of Delaware, makes it so.

The Bay State Gas Company of New Jersey issued $1,300,000 of its bonds upon the faith of the certificate made by the Mercantile Trust Company that it had and held in pledge the stock in question, and this was done with the consent and knowledge of the Bay State Gas Company of Delaware, and that company can hardly be permitted to repudiate the transaction, even though it be a fact that the shares of stock referred to were not, as against the construction company, affected by the trust agreement. However, this court cannot see that the New Jersey Company would be deprived of its security underlying its said bond and any equity it may have in the stock, should it be decreed by this court that the stock in question belongs to the Bay State Gas Company of Delaware. It having consented to the pledge and being the owner, the lien of the New Jersey Company would attach thereto in the hands of the Bay State Gas Company of Delaware. This court is of the opinion that the New Jersey Company is not a necessary or indispensable party to this litigation. Should it appear on the trial that the New Jersey Company occupies the position described, this court would have ample power in the decree to protect its interests by declaring the stock in question subject to the same lien it now has, if any.

Again, it appears to this court, from the bill of complaint, that the shares of stock in controversy here did not come into existence until November, 1893, under and pursuant to the authority granted under and by virtue of the Lyford act to make such increase, and are not within the terms of the trust agreement executed in March, 1889. If this be true, the New Jersey Company has no possible interest.

Again, the bill of complaint alleges that the New Jersey Company is a foreign corporation, and not within the jurisdiction of this court.

Section 737 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 587] provides as follows:

"Sec. 737. When there are several defendants in any suit at law or in equity, and one or more of them are neither inhabitants of nor found within the district in which the suit is brought, and do not voluntarily appear, the court may entertain jurisdiction, and proceed to the trial and adjudication of the suit between the parties who are properly before it; but the judgment or decree rendered therein shall not conclude or prejudice other parties not regularly served with process nor voluntarily appearing to answer; and nonjoinder of parties who are not inhabitants of nor found within the district, as aforesaid, shall not constitute matter of abatement or objection to the suit."

See Shields v. Barrow, 17 How. 130–139, 15 L. Ed. 158.

The defendant Mercantile Trust Company urges that the failure to offer to restore the $1,300,000 of bonds issued by the New Jersey Company, and now held by the Bay State Gas Company of Delaware under the alleged fraudulent agreement, in place of the $1,500,000 of stock, or to show any effort on the part of the complainant to

secure such action by the Bay State Gas Company of Delaware before bringing this action, is fatal to the bill. The bond was surrendered and canceled, and the Mercantile Trust Company, through the Bay State Gas Company of New Jersey, delivered to the Bay State Gas Company of Delaware $1,300,000 of the bonds of the New Jersey Company in exchange, so to speak, for the $1,500,000 of stock. The Mercantile Trust Company has the stock and the Bay State Gas Company of Delaware has the bonds. If the transaction was fraudulent both companies were parties thereto, and perhaps neither could maintain an action to set it aside. But the complainant, a stockholder and income bondholder of the Bay State Gas Company of Delaware, is not in this position. He was not a party to the fraud, and may not he and other stockholders and bondholders undo the wrong done to them by the fraudulent transaction without first requesting the Bay State Gas Company of Delaware to return the bonds issued by the New Jersey Company? It is, of course, true that he who seeks equity must do equity, and it is a condition precedent to the rescinding of a fraudulent or ultra vires act that restitution be made of the fruits of the transaction relieved against.

It is also urged in support of the demurrer that the complainant by suing to recover the fruits of the alleged fraudulent transaction must be held to have ratified them; that he cannot ratify in part and disaffirm in part. But the complainant is hardly suing to recover the fruits of the alleged fraudulent transaction or agreement. The complainant alleges that the Bay State Gas Company of Delaware is entitled to the $1,500,000 of stock fraudulently handed over to the Mercantile Trust Company which should have been handed over to the Delaware Company. The complainant seeks to have the fraudulent agreement by which that was done set aside, and the property to which it is entitled but for the fraud delivered to the Bay State Gas Company of Delaware. The complainant does not ratify the fraud. He complains of it, and simply seeks to have the wrong righted. The complainant adopts no part of the fraudulent transaction complained of. He says the fraud consisted in having the $1,300,000 of the bonds transferred to the Bay State Gas Company when they should have been transferred to the Mercantile Trust Company, and in having the $1,500,000 of stock transferred to the Mercantile Trust Company when it should have been transferred to the Bay State Gas Company of Delaware. It is very doubtful whether the complainant has any standing as an income bondholder to maintain this action. He has no judgment or execution returned unsatisfied. See Van Weel v. Winston, 115 U. S. 229, 6 Sup. Ct. 22, 29 L. Ed. 384.

The defendant Mercantile Trust Company insists that the complainant has no standing as a stockholder to maintain this action for the reason that the bill of complaint does not show sufficient efforts to secure action on the part of the corporation.

Equity rule 94, which is held to be imperative, provides:

"Every bill brought by one or more stockholders in a corporation against the corporation and other parties, founded on rights which may properly be asserted by the corporation, must * * * set forth with particularity the efforts of the plaintiff to secure such action as he desires on the part of the

managing directors or trustees, and, if necessary, of the shareholders, and the causes of his failure to obtain such action."

The allegation of the bill of complaint on this subject is as follows:

"And your orator avers that your orator, as an income bondholder and stockholder of the defendant the said Delaware Company, is entitled to demand that said Delaware Company take action to recover the said $1,500,000 of stock and the dividends that have been paid thereon, and to that end your orator has demanded of said Delaware Company that it institute the suit set forth in this your orator's bill of complaint against the said Mercantile Trust Company, but said Delaware Company has refused and neglected to bring such suit."

This court is of the opinion that the allegations of the complaint are a sufficient compliance with this rule. He says that he has demanded of the Delaware Company that it institute the suit set forth in the orator's bill of complaint against the said Mercantile Trust Company, but that said Delaware Company has refused and neglected to bring such suit. A demand that the suit be instituted for the recovery of this stock will include the taking of the necessary steps as conditions precedent to the bringing of the suit. The cause of the failure to obtain action by the company is that the Delaware Company has absolutely refused to bring the suit. It is not correct to say that the allegation in the complaint on this subject does not reach further than a request that the company bring a suit against the Mercantile Trust Company on the identical allegations contained in this bill. The Delaware Company was requested to institute the suit set forth in the bill of complaint, but it is not implied from this language that the Delaware Company was requested to file a bill of complaint containing any particular allegations. Had the suit been brought by the company, it would have been at liberty to insert such allegations and take such steps as preliminary thereto as it thought fit and proper.

The complainant could not offer to return the $1,300,000 of bonds of the New Jersey Company issued to the Delaware Company, as he is not in possession or control thereof, and, the company having refused to bring the suit, it would have been a vain thing for the complainant to have requested it to offer to return the $1,300,000 of bonds. The law does not require a party to do a vain thing.

The bill of complaint says "that your orator was uninformed as to the matters and things in this bill of complaint set forth until a few weeks before the commencement of this suit, and your orator avers," etc. This is the only allegation found in the bill giving an excuse for not bringing this action at an earlier date. For years dividends have not been paid, and the complainant has been put upon inquiry as to the causes of such nonpayment. The complainant does not allege that he has made any inquiry whatever, or that he has been denied any information which he might have obtained by inquiry had proper answers been given. The cause of action accrued when the alleged fraudulent agreement was made and consummated by the delivery of the bonds to the Delaware Company and of the stock to the Mercantile Trust Company. This occurred in 1893, at least eight years before the filing of the bill of complaint herein. True, the stock is still held by the Mercantile Trust Company in accordance with

the agreement, but, if the agreement was fraudulent and void or voidable, the cause of action in the company, and in the complainant, if the company refused to act, has existed all this time, and this court is of the opinion that within the authorities the bill of complaint is fatally defective in not showing more particularly the time of the discovery of the fraud, how the knowledge was obtained, why it was not obtained earlier, and the diligence exercised in looking into the matters of this company. Mere general averments of ignorance are not sufficient. Hubbard v. The Manhattan Trust Co., 87 Fed. 51, 30 C. C. A. 520; Harwood v. R. R. Co., 17 Wall. 79, 21 L. Ed. 558; Diefendorf v. House, 9 How. Prac. 243; The Key City, 14 Wall. 653, 20 L. Ed. 896; Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807; Carr v. Hilton, 1 Curt. C. C. 390, Fed. Cas. No. 2,437.

The complainant is a resident of the city of Boston, and the occasion of the alleged fraudulent transaction was the Lyford act, passed by the Legislature of the state of Massachusetts, and approved by the Governor of that state. The complainant must have known of this act, and it would seem probable that he knew something at least of the transactions of the company against which he held income bonds and in which he held stock. The bill of complaint, in the opinion of this court, should show either that nothing occurred to put the complainant on inquiry, or that he was put upon inquiry and failed to gain the required information in the exercise of due diligence.

This court is of the opinion that the six-years statute of limitations is not a bar to this action, and that it was brought in time.

It is further urged that the facts alleged in the bill of complaint show no fraud or conspiracy. It is urged that the sufficiency of the bill depends not upon the charges of fraud and conspiracy—that is, the use of words saying that fraud was committed and that there was a conspiracy—when the facts alleged in support of the charges fail to show fraud.

An act of the Legislature of a state is presumed to be valid until its unconstitutionality is declared by some court of competent jurisdiction. The bill of complaint, however, alleges that the Lyford act was unconstitutional, and that this fact was known to the defendants, and that it was the duty of the Delaware Company to resist it. The bill of complaint further alleges that with this knowledge, and with full knowledge of the effect of proceeding under it, the defendants took advantage of an unconstitutional act of the Legislature of the commonwealth of Massachusetts to perpetrate a fraud upon the Delaware Company and its stockholders and bondholders, and the particulars of what was done are then set out in full.

It is quite true that to charge that parties have complied with an act of the Legislature would not indicate fraud, but the contrary. This does not apply in this case, however, for to knowingly proceed under an act of the Legislature known to be invalid, for the purpose of cheating and defrauding the stockholders of the company, would constitute actionable fraud, if a fraud were actually perpetrated.

The demurrer to the bill of complaint is sustained, with costs and disbursements, upon the ground that the bill fails to set forth with

sufficient particularity the reasons why this action was not brought earlier, or, in other words, a noncompliance with equity rule 94. The complainant, however, may file an amended bill of complaint, on paying such costs and disbursements, on the first rule day after being served with a statement of such costs and disbursements, and a copy of the order entered sustaining the demurrer, and such amended bill of complaint may be amended in any other matter or matters the complainant desires.

An order in accordance herewith will be entered.