Aoheson, D. J.
In this case Alonzo Murray presented in open court his libel for wages against the steamboat F. B. Nimick, wherein he alleges “that the said steamboat is a vessel duly enrolled and licensed under the laws of the United States, in. the office of the surveyor of customs for the port of Pittsburgh, and has been engaged in navigating the Ohio river. ” The court ordered the libel to be filed and process to issue against the boat.
*87 T. W. Fowler, the owner of the boat, has moved the court to quash the proceedings and dismiss the libel, for the following reasons:
“First. That said libel filed by said libellant is a claim for seaman’s wages, and that the said libollant has not complied with the act of congress, (July 20, 1790, Bev. St. §§ 4546 and 4547,) in not having a commissioner certify to this honorable court sufficient cause of complaint, as required by the terms of said act.”
“Second. That said respondent’s vessel is a steam ferryboat, running between two points or places in the same state, within the body of the same county, to-wit, between the foot of Locust street, Allegheny City, Pennsylvania, and Cork’s run, on the opposite side, being enrolled and licensed as such at her home port, the city of Pittsburgh. ”
In support of the motion, there has been produced and filed a certified copy of the boat’s enrollment, showing that she is a steam ferry-boat of 64 tons, and the libellant admits it to be true that, during the period covered by his claim for wages, the vessel plied as a steam ferry-boat between points on opposite sides of the Ohio river, to-wit: Allegheny City and Cork’s run, within the county of Allegheny and state of Pennsylvania.
1. Sections 4546 and 4547, of the United States Bevised Statutes, which re-enact substantially the provisions of section 6 of the act of July 20, 1790, provide that if the wages of any seaman are not paid after they become due and payable, or in case of a dispute touching the same, the district judge, or, in certain cases, any judge or justice of the peace, or any commissioner of a circuit court, may summon the master of the vessel to appear before him and show cause why process should not issue against the vessel; and if the master neglects to appear, or appearing does not show ¿hat the wages are paid or otherwise settled or forfeited, and if the dispute is not forthwith settled, the judge, justice or commissioner shall certify to the clerk of the district court that there is sufficient cause whereon to found admiralty process, and thereupon the clerk shall issue process against the vessel, etc.
*88 The question intended to he raised by the first reason assigned, in support of the motion to dismiss the present libel, is whether the proceedings authorized by the statute are the exclusive remedy for a seaman suing the vessel for his wages, or can he, without resorting to this preliminary measure, apply to the court, and upon such application obtain ordinary process in admiralty against the vessel ? This question has not hitherto been raised in this court, although the records show a number of instances where the same course was pursued in suits in rem for wages, as in the present case. The question, however, has received the careful consideration of district judges of learning and large experience in admiralty cases, who have held that the remedy conferred by the statute is hot exclusive, but cumulative; and that the right of the seaman to arrest the vefesel is not dependent upon a previous resort to the statutory proceeding, but that it is optional with him whether to pursue the preliminary measure of summoning the master, or make direct application for admiralty process. The Ship William Jarvis, (per Sprague, J.,) Sprague’s Decisions, 485; The M. W. Wright, (per Longyear, J.,) 1 Brown’s Ad. Rep. 290; The Waverly, (per Dyer, J.,) 7 Bissell, 465. The first two of the above cited cases arose under the act of 1790; the latter, under sections 4546 and 4547 of the Bevised Statutes. These are well considered cases, and they adopt as applicable to remedies, under the maritime law, the well settled rule of construction that where a statute provides a new remedy it is cumulative, unless the statute expressly or by necessary implication takes away the common law remedy. Sedgwick on Cons, of Stat. and Com. Law, 75.
In the foot note to the report of the case of The William Jarvis, supra, it is said that in many reported cases it seems that no such preliminary summons issued, e. g. The Martha, Bl. & How. 156, and Judge Dyer says, (7 Bissell, 471:) "It has long been the practice of this court, and the practice of the district courts of other districts, to treat these provisions as furnishing rather an optional and cumulative remedy, than one which excludes the seaman from the right or privilege, *89 in the first instance, to resort to admiralty process.” Following the above quoted decisions, I hold that the procedure authorized by the statute is a summary and cumulative remedy given to the seaman, which he may at his option pursue, but that the statute does not deprive him of the right in the first instance to the ordinary admiralty process against the vessel upon a direct application to the court or judge.
2. The second reason assigned in support of the motion to dismiss the libel raises the question whether a steam ferryboat, plying between points on the opposite sides of the Ohio river, within the same state and county, is subject to admiralty jurisdiction?
Many of the cases bearing upon this question, cited in support of the motion to dismiss, are without authority, since the more recent decisions of the supreme court, which declare that the admiralty jurisdiction of the federal courts extends to all navigable waters. Hine v. Trevor, 4 Wall. 555; The Eagle, 8 Wall. 15.
Navigability, so far as water is concerned, is now the only test of admiralty and maritime jurisdiction. Id.; The General Cass, 1 Brown’s Ad. Rep. 334. It is immaterial, therefore, that the F. B. Nimick plied wholly within the county of Allegheny, nor is it material, it seems to me, that in the course of her navigation she merely crossed and recrossed the Ohio river; for admiralty jurisdiction does not depend upon the length of the voyage. The General Cass, supra.
The subject-matter of this libel being of a maritime nature, viz., wages earned by an employe upon a vessel navigating waters within admiralty jurisdiction, does the jurisdiction of the court fail merely because the vessel upon which the libellant was employed was engaged in running as a ferryboat ? Clearly not, it seems to me. It is not the form, size, construction, equipment, or means of propulsion, that establishes the jurisdiction. Ben. Ad. § 218; The General Cass, supra. In Ex parte Easton, 5 Otto, 68, it was held that a district court has jurisdiction in admiralty to enforce in rem a claim for wharfage against a canal-boat or barge.
*90 Mr. Benedict, in his work on admiralty, (§ 218,) says: "A scow, a lighter, a ferry-boat, and probably a raft or timber-ship, under certain circumstances, would be held to be a ship or vessel, and subject to the same maritime law as other vessels.” A steam ferry-boat of the capacity of the F. B. Nimick transports on a large scale both passengers and freight, and is as much engaged in maritime commerce and business as if her voyages were longitudinal, instead of across the stream.
In this connection it is worthy of observation that by section 4426 of the Revised Statutes, title, “Regulation of Steam Vessels,” the hull and boilers of every ferry-boat propelled by steam are subject to inspection under the provisions of said title, and such boats, for certain purposes, are made subject to the regulations of the boards of supervising inspectors; and the act provides that “no such vessel shall be navigated without a licensed engineer and a licensed pilot.”
I am aware that in Thackery v. The Farmer, Grilpin’s Rep. 524, there is an obiter dictum, and in Harris v. Nugent, 3 Cir. C. C. Rep. 649, it was ruled that a ferry-boat is not amenable to the jurisdiction of the United States district courts sitting in admiralty. But these cases were decided at an early day, when the admiralty jurisdiction of these courts was supposed to lie within comparatively narrow limits.
On the other hand, in Chesman v. Two Ferry-Boats, 2 Bond, 863, and in Gate City, 5 Biss. 200, it was held that ferryboats propelled by steam are subject to the jurisdiction of the national courts in admiralty, when running between localities in different states. But, as already seen, it is not essential to admiralty jurisdiction that a vessel should be engaged in inter-state commerce.
In a recent case in this district, The Monongahela Navigation Co. v. The Steam Tug Bob Connell,* 10 Pittsburgh Legal Journal, (N. S.) 123, the circuit judge (McKennan) held that lockage in the Monongahela river is of a maritime .nature, and cognizable in a court of admiralty, and in his *91 opinion he remarks upon “the growing tendency of the decisions of the supreme court towards the expansion of admiralty jurisdiction in this country.”
I but follow in the line of these decisions in holding that the claim of this libellant against the steam ferry-boat F. B. Nimick is cognizable in admiralty.
The motion to quash proceedings and dismiss libel is overruled, and fourteen days allowed within which to file answer.

S. C. 1 Fed. Rep. 218. See also, Malony v. City of Milwaukee, Id. 611.