## The Frank C. Barker, Her Tackle, etc.

(*District Court, D. New Jersey.* February 2, 1884.)

1. SEAMEN—DESERTION—DISCHARGE.

   In consequence of a disagreement between the master of a vessel and his seamen about the amount of wages due them, the mariners were ordered to go to work or go on shore. They agreed to go ashore if he would give them orders for their wages, stating that they would regard themselves in that case as discharged. The master gave them the orders, and the sailors left the vessel. *Held,* that they were discharged, and were not to be looked on as deserters.

2. ENTIRE CONTRACT—DISCHARGE—RECOVERY OF WAGES EARNED.

   Upon the wrongful discharge of a workman engaged under an entire contract, he is entitled to recover his wages during actual service.

3. STATUTORY REMEDY NOT EXCLUSIVE.

   The remedy afforded seamen by sections 4546 and 4547 of the Revised Statutes is not exclusive, and the usual process *in rem* against the vessel is still open to them.

In Admiralty. Libel *in rem* for wages.

*Bedle, Muirheid & McGee,* for libelants.

*E. A. Ransom,* for respondents.

NIXON, J. A careful reading of the voluminous testimony in this case shows that the unfortunate misunderstanding between the owners and the crew, leading to the present controversies, has arisen from the double-faced dealing of the master, Raynor. It must be borne in mind that seamen of this class are generally ignorant; and are often imposed on, and that such imposition makes them suspicious. The libelants were hired at $25 a month and a bonus of three cents for every 1,000 fish caught during the season. There seems to have been no very definite arrangement when their wages were to be payable. The owners testify what their understanding was, and what instructions they gave to the master in regard to the hiring of the crew. But there is no evidence that any hint was given to the libelants that the payment of three cents per thousand on the fish taken was contingent on their remaining to the end of the season, or that no payment was to be made on account until the season ended, or that the men would be expected to have deducted from their wages all that was expended for grub above three dollars a week. On the contrary, I think it is a fair inference, from the testimony, that the libelants thought at the time of their hiring that their wages would be paid monthly, and the bonus, or fish-money, as it was earned, and as they desired to have it.

It appears that some of the crew had been employed in the same business the previous year by the same master and no suggestion was then made that they would receive nothing on account of the bonus until the end of the season's work, or that they would be charged anything on account of their grub, whatever the cost of providing it might be. But after the season's work was fully under way news came to the ears of the libelants that these new terms were to be im-

posed. In the controversy over it which followed, the master seems to have taken sides with the men, when with them, and with the owners when away from the crew. About the first of July some of the libelants went to the master for payment on account of the bonus, or fish money, earned, as they had done the year before. It was agreed that they would estimate the number caught to that date at 500,000. But when the owners were applied to they refused to pay anything, stating for the first time that all earnings would be withheld till the close of the season. This was followed shortly afterwards with the other claim in regard to the expenses for the grub. They at once demanded, both of the master and of the owners, that these questions, and especially the latter, charging them for any part of their board should be definitely settled. The owners and master were wrong in attempting to incorporate new terms into the contract for hiring without the consent of the libelants, and the latter were right in insisting upon an amicable adjustment of the differences, or upon a separation.

The libelants were peremptorily told to go to work or to go ashore. They agreed to the latter if they were paid off in full to date. Elliott says that, when he was ordered to go ashore, he replied that he would go if the captain would give him an order for his money. Upon receiving his order the other men asked for theirs, also, and they were given. Pages 74, 75. The master assented to the payment, and gave them orders upon the owners to that effect. The orders were taken to the owners, who, on a subsequent day, handed to the captain, for them, checks for the month's wages then due, but not including their earnings for the number of fish caught. The libelants found that the checks were drawn to their order, and in full for all claims. They declined to use them, and filed libels forthwith for the wages and fish money due to the date of the master's orders. The proctor of the respondents claims that this was a desertion, and the libelants, that it was a discharge. Were the libelants discharged? This question is often determined affirmatively by circumstances, in the absence of direct proof. *Granon* v. *Hartshorne*, Blatchf. & H. 458; *The David Faust*, 1 Ben. 187. The proof is clear that the libelants considered themselves discharged by the act of the master. While they were parleying in regard to being charged for the expenses of their grub, exceeding three dollars a week, and properly insisting that the question should be settled without further delay, and when the master ordered them to go to work or go ashore, they agreed to the latter, provided he would give them an order upon the owners for what was due to them, and at the same time stated that they should look upon such an order as a discharge. With express knowledge as to how the libelants regarded the proceeding, he gave them the order for the wages due, with which they went to the owners for payment. I must hold the giving of such an order, under the circumstances, as a discharge of the libelants.

This view of the case renders it unimportant to determine whether the men were shipped for the season or from month to month, and whether the bonus was payable at the end of the season or by the month. If they were discharged by the master they should receive what they had earned up to the date of the discharge, whether due under the original contract or not. But it may be conceded that I am in error in regard to the discharge of the libelants, and still they are entitled to a decree. The respondents testify to the instructions which they gave to the master in regard to hiring the crew. But the master was examined, and he does not pretend to have carried them out in his negotiations with the men. Not one of them was told that the bonus was to be withheld until the end of the season, or that any deductions would be made from their wages for board if the expense exceeded three dollars per week. On the contrary, the testimony of Elliott is uncontradicted that during the previous years he had been in their employ, and that the wages were paid monthly, and the bonus as it was earned and whenever it was asked for. On page 29 of his evidence he states that when the hiring took place he said to the master: "I suppose we get the monthly pay the same we did last year, every month?" "Yes," said he. "And the bonus when we want it?" says I; says he, "Yes." While I am not disposed to wholly justify the conduct of the men, great allowance should be made for them under the provocation of an attempt to impose upon them new and unexpected obstacles to receiving their hard-earned wages. The proctor of the respondents at the hearing claimed that three of the libels should be dismissed because they were filed within 10 days after the alleged discharge of the libelants. He contended that the remedy afforded by sections 4546 and 4547 of the Revised Statutes was exclusive, and that the provision therein made for an application to a judge, commissioner, or justice of the peace, must be observed in all cases except where the vessel was about to go out of the jurisdiction of the court. But this is not the construction which the courts have ordinarily given to these sections. It is held that the remedy is cumulative and not exclusive, and that, notwithstanding these provisions, the courts of admiralty remain open to seamen for the usual process *in rem* against the vessel whenever they prefer to pursue that course. *Murray* v. *Ferry-boat*, 2 Fed. Rep. 88; *The William Jarvis*, Spr. Dec. 485; *The M. W. Wright*, 1 Brown, Adm. 290; *The Waverly*, 7 Biss. 465.

Let a decree be entered for the libelants, and a reference, unless the parties can agree from the testimony already taken upon the amount of wages due.