THE ELIHU THOMPSON.

(District Court, W. D. Washington, W. D. June 27, 1905.)

No. 452.

1. SEAMEN—WAGES—PAYMENT—TIME—LIBEL—STATUTES.

Under Rev. St. § 4529 [U. S. Comp. St. 1901, p. 3077], providing that a seaman engaged in the coasting trade shall be entitled to immediate payment of his wages on discharge, where seamen were discharged, and payment of wages refused, they were entitled to libel the vessel at once therefor, without instituting proceedings under sections 4546, 4547 [U. S.

Comp. St. 1901, p. 3087], authorizing a preliminary inquiry by summoning the master to show cause for nonpayment of wages, and providing that if he fails to appear or to show that the wages have been paid or forfeited, and the matter be not settled forthwith, the judge or magistrate issuing the summons may then certify that there is sufficient ground to issue process in rem against the ship; such sections being permissive only.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Seamen, § 143.]

2. SAME—SEAMEN SHIPPED CONTRARY TO LAW.

Where the mate of a vessel of more than 50 tons burden, engaged in the coasting trade, had general authority to hire seamen, and engaged libelants to serve as members of the crew on a certain voyage, without making any agreement with them with respect to their wages, and they were received on board by the mate as members of the crew, and treated as such while at an intermediate port, without having ever assented to any contract to work for their passage without other compensation, it was the duty of the master to require libelants to sign shipping articles for the voyage before carrying them to sea, as required by Rev. St. § 4520 [U. S. Comp. St. 1901, p. 3073], and Act Cong. Aug. 19, 1890, c. 801, 26 Stat. 320 [U. S. Comp. St. 1901, p. 3065]; and hence such libelants were entitled to recover the highest rate of wages paid at the port of departure for the time of their actual service, as provided by Rev. St. §§ 4521, 4523 [U. S. Comp. St. 1901, pp. 3073, 3075].

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Seamen, § 69.]

3. SAME—EVIDENCE—JUDICIAL NOTICE.

Where, on a libel for seamen's wages on a coasting vessel, libelants were entitled to the highest rate of wages paid at the port of departure for the time of their actual service, and, though there was no direct evidence as to the going rate of wages at that port, intimate commercial relations existed between the port of departure and port of destination, the court would take judicial notice of such relations, and, in the absence of proof to the contrary, would infer that the highest rate of wages at the port of departure was not less than the usual wages paid at the port of destination.

In Admiralty. Suit to recover wages for services performed as members of the ship's crew on a voyage from Nome to Tacoma without the signing of shipping articles. Decree for libelants.

F. S. Griffith and Sachs & Hale, for libelants.
A. R. Titlow, for respondent.

HANFORD, District Judge. In the month of September, 1904, the steamship Elihu Thompson, being at Nome, Alaska, in the progress of a voyage from Tacoma to northern ports and return, and then bound from Nome to Tacoma, via Taku, in southeastern Alaska, at which place she was to take on part of her cargo, the libelants were taken on board as additional members of the crew; but they were not required to sign shipping articles, and there was no express contract made for the payment of wages for their services. They were in the service of the ship 21 days, and during that time they were treated as members of the crew, and performed the ordinary duties of seamen, and worked faithfully in loading and storing the cargo taken on board at Taku. On arrival of the ship at Tacoma they left the vessel without any formalities of being discharged, and a day or two afterwards demanded payment of their wages, which the captain refused. This suit having been commen-

ced, and the vessel attached, exceptions to the libel were interposed, and were sustained by the court; and thereupon an amended libel was filed, alleging substantially the facts above recited, and to the amended libel the respondent answered, raising issues of facts, and also contesting on technical grounds the right of the libelants to maintain the suit.

It is contended that the suit was commenced prematurely, for the reason that the master was not summoned to appear before the judge or any magistrate, to show cause, preliminary to the issuing of process against the vessel, and the period of 10 days after discharging cargo had not elapsed when the libel was filed. In this it is assumed that sections 4546, 4547, Rev. St. U. S. [U. S. Comp. St. 1901, p. 3087], constitute a legal obstruction to the prosecution of suits in rem by seamen to recover wages. That idea is directly contrary to the manifest intent of the law, which in terms allows proceedings to be commenced whenever there is a dispute concerning wages; and section 4529, Rev. St. U. S. [U. S. Comp. St. 1901, p. 3077], entitles a seaman engaged in the coasting trade to payment of his wages immediately at the time of his discharge. These libelants were in fact discharged when the vessel arrived at Tacoma, for the captain has testified that he instructed the cook to discontinue their meals, as they were not to remain in the ship. Therefore their right to maintain a suit to recover what is due them became complete when payment was demanded and refused. It has been decided by the courts in a number of cases that section 4546 is a permissive statute and not imperative. See cases cited below. It authorizes a preliminary inquiry by summoning the master to show cause for nonpayment of wages, and the following section provides that if the master fails to appear in response to a summons, or fails to show that the wages have been paid or forfeited, and the matter be not settled forthwith, the judge or magistrate issuing the summons may then certify that there is sufficient ground upon which to issue process in rem against the ship. Manifestly this procedure contemplates a judicial or quasi judicial inquiry, affording the master an opportunity to introduce evidence to prove that the wages have been paid or forfeited, and the exercise of discretion in awarding or refusing a certificate of sufficient cause. Therefore the issuance of the certificate cannot be compelled by a writ of mandamus, and the law makes no provision for an appeal; and, if the proceeding by summons is prerequisite to the issuing of process in rem, a commissioner or a justice of the peace, by deciding, upon testimony introduced by the master, that the wages earned have been paid or forfeited, may defeat the lien for wages without a fair trial upon the merits by a court of competent jurisdiction. To thus construe the law so as to invest local magistrates with power to adjudicate finally a cause of admiralty jurisdiction renders it obnoxious to the Constitution, which confers exclusive jurisdiction of such causes upon the national courts which Congress is authorized to establish. The law does not in express terms enjoin the issuance of a summons or a certificate of sufficient cause as a prerequisite to the exercise of jurisdiction by a court upon

which general admiralty jurisdiction has been conferred, and the courts will not by construction incorporate into it such an addition to its provisions as will impair the jurisdiction conferred upon them by the Constitution and the laws enacted to make its provisions effective. It is my opinion that the law was intended to provide a simple and summary method for hastening the payment of wages admitted to be due. In effect, the summons is a mere warning of an intention to proceed in rem unless payment of the wages due shall be forthwith tendered. It is a useless proceeding in any case in which the right to wages or the amount of the balance due is disputed, and a burden which the courts will not lay upon sailors when not required to do so by any plain mandate of the law. See The William Jarvis, Fed. Cas. No. 17,697; The M. W. Wright, Fed. Cas. No. 9,983; The Waverly, Fed. Cas. No. 17,301; Murray v. Ferryboat (D. C.) 2 Fed. 86; The Edwin Post (D. C.) 6 Fed. 206; The Frank C. Barker (D. C.) 19 Fed. 332; The Shelbourne (D. C.) 30 Fed. 510.

The principal ground of defense alleged in the answer is that the vessel carried a full complement of seamen from Tacoma, who signed shipping articles for the round trip, and she did not require additions to her crew at Nome, and at the time the libelants were received on board there were at Nome a great many disappointed miners who wished to return to Puget Sound, but were destitute and unable to pay fare, and were willing to work for their passage; that the ship was engaged to carry as freight a large consignment of canned salmon from a cannery at Taku to Tacoma, and the captain anticipated that upon arrival at Taku there might be a scarcity of men there to put the cargo on board, and for that reason he authorized the mate to take four men as workaways to earn their passage from Nome to Tacoma by loading freight at Taku; and that the mate, without any other authority, engaged four men, including the libelants, upon those conditions. The evidence sustains the allegations of the answer in part, but not to the extent of making a complete defense. I find as a fact proven by the evidence that the mate had general authority to hire seamen, and that he did engage the libelants to serve as members of the crew on the trip from Nome to Tacoma, without making any agreement with them with respect to wages, and they never assented to any contract to work for their passage, without other compensation. They were received on board by the mate as members of the crew, and were treated as members of the crew; and at all times, while at sea, as well as when handling freight at Taku, they were obedient to the officers of the ship, and performed whatever duties were required. The Elihu Thompson is a vessel of more than 50 tons burden, engaged in the coasting trade, and by the provisions of section 4520, Rev. St. U. S. [U. S. Comp. St. 1901, p. 3073], and Act Aug. 19, 1890, c. 801, 26 Stat. 320, and amendatory statutes [U. S. Comp. St. 1901, p. 3065], it was the duty of the master to require the libelants to enter into a contract in writing—that is to say, to sign shipping articles for the voyage—before carrying them to sea. Therefore the case is clearly within the purview of section 4521, Rev. St. U. S. [U.

S. Comp. St. 1901, p. 3073], and section 4523, Rev. St. U. S. [U. S. Comp. St. 1901, p. 3075], which in effect give to every seaman shipped contrary to law an absolute right to recover the highest rate of wages paid at the port of departure for the time of his actual service. There is no direct evidence with respect to the highest rate of wages paid to seamen shipped at Nome, but the evidence does prove that the going rate of wages at Puget Sound ports at the time of the voyage in question was $45 per month, and the court takes judicial notice of the intimate commercial relations existing between the ports of Puget Sound and Alaskan ports, and, in the absence of proof to the contrary, will infer that the highest rate of wages at Nome was not less than the usual rate of wages paid at Tacoma.

The suit was commenced in the name of three libelants, but only two of them, viz., Moore and Shea, have appeared in the proceedings, and the decree to be entered will be in favor of those two, and will award to each of them the sum of $33 and costs.