## THE OLIVER AMES.

### (District Court, D. Maine. April 20, 1910.)

### No. 116.

**1. SEAMEN (§ 27*)—LIEN FOR WAGES—LACHES.**

The statutes of the United States providing remedies for the collection of seamen's wages assume that they shall act promptly, and while no inflexible rule can be laid down to measure the time by lapse of which without action a claim may fairly be adjudged to be stale, but each case must be determined by its own circumstances, the general rule is that delay in enforcing such a claim after a reasonable opportunity to do so must be taken as a waiver of the right to a lien as against subsequent purchasers and incumbrancers in good faith without notice, unless the delay is satisfactorily explained.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. § 141; Dec. Dig. § 27.*]

**2. SEAMEN (§ 27*)—LIEN FOR WAGES—WAIVER BY DELAY IN ENFORCEMENT.**

Where the mate of a schooner, who was the son of the master and principal owner, had not been paid his wages in full for five years, a yearly settlement having been made and the balance due him allowed to stand, he must be held to have postponed his lien therefor to the claims of persons who during such time, with his knowledge, furnished supplies and repairs for the vessel in foreign ports without knowledge of his claim, and will be given priority only to the extent of the wages due him for the current year in which the vessel was libeled.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. § 141; Dec. Dig. § 27.*]

In Admiralty. Suit by Israel Snow and others against the schooner Oliver Ames. On claim of the mate, David A. Morgan, for wages. Lien allowed priority for part of wages due.

Benjamin Thompson, for libelant.

William H. Gulliver, for claimant.

HALE, District Judge. The libel in this case was filed August 16, 1909. By it the libelants seek to enforce a lien for labor and materials furnished in making repairs upon the schooner Oliver Ames at Rockland, Me. The schooner was sold August 28, 1909, at marshal's sale, for the sum of $2,000. After paying the expenses of sale, the balance of the proceeds was paid into the registry of the court.

Since the filing of the libel more than 30 interveners have filed petitions on claims which they ask to be adjudged liens upon the vessel and paid from the funds in the registry. Among these interveners are the seamen, including the mate whose case is now before me. I have already passed upon the claims of the other seamen. I have adjudged them entitled to priority, and have ordered them paid, by decree entered September 15, 1909. There now remains in the registry for distribution among the lien claimants the sum of $1,407.30.

The payment of the claim of this mate, David A. Morgan, is opposed by the intervening materialmen on the ground that the lien has been waived by the mate's laches, or lost by reason of staleness.

The mate is a son of Capt. Noah W. Morgan, the master of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

schooner Oliver Ames, and the owner of $^{40}/_{64}$ of the vessel. The remaining $^{24}/_{64}$ are owned by Frank L. Mason, William L. Mason, and Church Bros., and by the estates of Oliver Ames and Oakes Ames, nearly all the owners being residents of Massachusetts. The mate testifies that such had been the ownership of the vessel for a considerable time, and that he had knowledge of the ownership.

The mate lives with his father at New Bedford, Mass., from which port the schooner hails. The testimony shows that it was customary for the father and son to look over the vessel's books once a year and reckon up the amount due the mate, strike a balance on the books, and start a new account; that the wages of the mate have been paid in full to the end of the year 1904, but have not been paid in full since, with the exception of a period of 24 days in January, 1907, when he was overpaid the sum of $2.50. He claims the sum of $851.67; the same being the aggregate of all yearly balances due him for wages from January 1, 1905, to August 16, 1909. The following statement shows these yearly balances, as made up by him:

Balance due for wages for the period between January 1, 1905, and December 19, 1905............................................... $219 83
Balance for the period between December 19, 1905, and July 5, 1906, 262 67
Balance for the period between July 5, 1906, and January 5, 1907.... 1 75
Balance for the period between March 20, 1907, and up to and including December 31, 1907.................................................. 22 87
Balance for the period between March 17, 1908, and February 21, 1909 ..................................................................... 244 53
Balance for the period between March 8, 1909, and August 16, 1909.. 102 52
                                                                    ——————
    A total of................................................... $854 17
Less overpayment for the period between January 5, 1907, and January 29, 1907............................................................ 2 50
                                                                    ——————
                                                                   $851 67

The claims of the interveners, other than the seamen, are for towage, labor, and materials necessary for the repair of the hull and sails of the schooner, use of dry docks, and for provisions, amounting in the aggregate to more than $6,000. These accounts were contracted during the years 1907, 1908, and 1909. Allowance of the mate's claim as a lien is opposed by the other interveners for the reasons hereinbefore stated, and on the further ground that in equity he is estopped from setting up a lien claim, the payment of which will consume the greater part of the proceeds, as against the various interveners, who, with his knowledge, have supplied and repaired the vessel at a time when they were without knowledge of any such unpaid claim. Has the mate's lien upon the vessel been lost, as against interveners who have repaired the vessel and furnished supplies, by reason of his failure to enforce the claim earlier?

The liberality extended to seamen by the admiralty law has given them a well-known privilege in the enforcement of their liens for wages. Judge Story and Judge Ware have quoted the old ordinances that the savings of a wreck are pledged "to the last nail" for the payment of seamen's wages, and that the sailor is entitled not only to the "last plank of the ship, but to the last fragment of the freight."

The Paragon, Fed. Cas. No. 10,708; Pitman v. Hooper, Fed. Cas. No. 11,186.

The admiralty rules provide specially that seamen may proceed for their wages against the ship, freight, and master, against the ship and freight, and against the owner or the master alone in personam. Admiralty rule 13. And the court in this district has held that the rule applies even in the case of the cook of a fishing vessel hired and to be paid by the crew under shipping articles. The statutes of the United States provide that seamen's wages in certain classes of vessels are not subject to attachment (Rev. St. § 4536 [U. S. Comp. St. 1901, p. 3082]); that they are privileged in the matter of payment, and are not subject to the limitation of liability of shipowners.

The Congress and the courts have thus given to seamen prompt and ample protection. This consideration is based, not only upon the fact that they are, as a class, without forethought, but also in order that in their necessities they may be encouraged to proceed promptly in the enforcement of their liens. In the cumulative remedies provided for the collection of seamen's wages the Revised Statutes of the United States assume that seamen shall act promptly. Rev. St. §§ 4529, 4546, 4547 (U. S. Comp. St. 1901, pp. 3077, 3087), and section 4593 (see U. S. Comp. St. 1901, p. 3112); The Schooner David Faust, Fed. Cas. No. 3,595; The Frank C. Barker, 19 Fed. 332; Schooner Edwin Post (D. C.) 6 Fed. 206. And it may generally be said that those who furnish materials and make repairs in the ports along the coast contract with the knowledge that claims for seamen's wages are not generally allowed to accumulate.

No inflexible rule can be laid down to measure the time by lapse of which, without action, a claim may fairly be adjudged to be stale. The maritime courts agree that the question does not depend so much upon the lapse of time as upon the circumstances which have caused the nonenforcement of the lien. Every case must be determined by its own circumstances. The Harriet Ann, Fed. Cas. No. 6,101; The Key City, 14 Wall. 653, 660, 20 L. Ed. 896; The H. N. Emilie (D. C.) 70 Fed. 511; The John Dillon (D. C.) 46 Fed. 527.

The general rule is that delay to enforce a maritime claim after a reasonable opportunity to do so must be taken as a waiver of the same, as against subsequent purchasers and incumbrancers in good faith, without notice, unless the delay is satisfactorily explained. Such waiver, of course, does not operate to discharge the debt, but to deny to the creditor some security which the law holds him to have lost by laches. The Dubuque, Fed. Cas. No. 4110; The Bolivar, Fed. Cas. No. 1609; The Nellie Bloomfield (D. C.) 27 Fed. 524; The Lillie Mills, Fed. Cas. No. 8352; The Bristol (D. C.) 11 Fed. 156, 162, affirmed in (C. C.) 20 Fed. 800; Leland v. Medora, Fed. Cas. No. 8237; Pierce v. The Alberto, Fed. Cas. No. 11,142; Herbert v. The Amanda F. Myrick, Fed. Cas. No. 6395; The Utility, Fed. Cas. No. 16,806; Packard v. The Louisa, Fed. Cas. No. 10,652; Stillman v. The Buckeye State, Fed. Cas. No. 13,445.

The case now before the court is unlike any to which my attention has been called. The mate, with his father, the captain of the schooner, made up yearly balances in the years 1905, 1906, 1907, and 1908. At

each of these settlements he was credited with the amount of his wages and charged with the sums he had received. He testifies that he was saving his money; that he thought the vessel was good, and the owners were good; that his father had spoken with him about these facts; that he knew that the vessel was contracting bills with other people; that those bills were going to be paid; and that the vessel was liable for them. The testimony shows that the vessel was making frequent voyages; that it often became necessary for her to be repaired, as well as furnished with stores, towages, water, and the use of railways and dry-docks; that the mate had frequent opportunity to demand his wages, and, if not paid, to enforce his lien. It seems clear to me that the mate has himself postponed his own lien; that on the several occasions when he settled with his father and made his balances he deliberately took his chances as against the men who, with his knowledge, were furnishing supplies and repairs. It is under such circumstances as these that the courts have repeatedly said, in the cases cited, that it is their duty to deny to a claimant the privilege of enforcing a lien which he has suffered to lie dormant and secret, without excuse, until the rights of innocent third parties would be prejudiced by its enforcement. Against such a lien it is the policy of the law to protect subsequent bona fide purchasers and incumbrancers.

In this case I am constrained to believe that it would be grossly inequitable to allow the mate's claim to stand as a secret lien upon the vessel, against men who subsequently furnished supplies and repairs for the ship, and so enabled her to proceed upon her voyages. These materialmen and repairers must be presumed to have had in mind that, in accordance with ordinary conditions, the seamen had been promptly paid.

It is insistently urged that the fact of the mate having been upon the ship for a very long time was notice to other claimants that he might be expected to have a claim. This furnishes no argument in his favor. I must hold that he himself has postponed his lien to subsequent incumbrancers, and that the court ought not to enforce it against such incumbrancers. I hold that he is entitled to a lien upon the vessel only for the amount of his wages for the year 1909. This amount may be obtained by an examination of the accounts or agreed upon by counsel.