[Civil No. 242.   Filed February 13, 1889.]

[20 Pac. 311, *sub nom.* Bryan v. Kales et al.]

T. J. BRYAN, Plaintiff and Appellant, v. D. H. PINNEY et al., Defendants and Appellees.

1. EQUITY—LACHES—ACTION TO SET ASIDE JUDGMENT OF FORECLOSURE.
   —Where plaintiff's grantor stood by and saw property sold under foreclosure, failed to redeem, brought no action to set aside the judgment of foreclosure, for nearly four years saw the property enhance greatly in value, saw it sold time and time again, then sells it to the plaintiff, who asks that the judgment be annulled and the subsequent transfers canceled, equity will refuse relief, the parties having slept too long on their rights.

APPEAL from a judgment of the District Court of the Second Judicial District in and for the County of Maricopa. William W. Porter, Judge. Affirmed.

The facts are stated in the opinion.

Cameron H. King, and Goodrich, Smith & Street, for Appellant.

The only point to be considered in this court is the question of laches. We submit that the statute of limitations applies with equal force under our statutes to actions at law and suits in equity. Mere delay or laches in bringing suit for land short of the period prescribed by the statute of limitations will not defeat plaintiff's action. Angell on Limitations, pp. 24, 25; Wood on Limitation, p. 115, sec. 58; *Elmendorf* v. *Taylor*, 10 Wheat. 168; *Rogers* v. *Brown*, 61 Mo. 187-191; *Lux* v. *Haggin*, 69 Cal. 267, 10 Pac. 674; *Lord* v. *Morris*, 18 Cal. 486, 489; *Gratton* v. *Wiggins*, 23 Cal. 34; *Hancock* v. *Plummer*, 66 Cal. 338, 5 Pac. 514; *Piller* v. *S. P. R. R.*, 52 Cal. 44; *Williams* v. *Conger*, 49 Tex. 602; *Hardy* v. *Hardin*, 4 Saw. 548, Fed. Cas. No. 6060; *White* v. *Sheldon*, 4 Nev. 288; *United States Bank* v. *Daniel*, 12 Pet. 56; *Gray* v. *Bartlett*, 20 Pick. (Mass.) 193, 32 Am. Dec. 208.

Baker & Campbell, Clark Churchill, and D. H. Pinney, for Appellees.

As to the statute of limitations, it is contended by appellant that the statute applies with equal force to actions at law and suits in equity. This is so in many cases. There are three classes of cases in regard to the bar of time: First, those in which equity is bound to apply the statute of limitations,— i. e. in all cases of concurrent jurisdiction at law and in equity. 2 Story's Equity Jurisprudence, 1520; *Hall* v. *Russell*, 3 Saw. 575, Fed. Cas. No. 5943. Second, those in which it merely acts in analogy to those statutes and not in obedience to them. (See the examples in Story, *supra*, and cases cited by appellant. *Elmendorf* v. *Taylor*, 10 Wheat. 168, is notably of this class.) Third, those in which the court is neither bound nor acts upon the principle of analogy to them, but proceeds on doctrines peculiar to and inherent in itself.

"But a defense peculiar to courts of equity is founded upon the mere lapse of time and the staleness of the claim in cases where no statute of limitations directly govern the case." 2 Story's Equity Jurisprudence, 1520. To the latter class is usually assigned (1) those cases in which the public convenience requires there shall be a speedy end of strife, (2)

others in which some of the principal parties in transactions
sought to be reviewed are dead and their vouchers lost, (3)
others in which the court could not be certain, from lapse of
time, that relief apparently proper would certainly be just,
and (4) others where the disturbance of purchasers or trans-
actions acquiesced in for a greater or less time would preju-
dice the vested rights of third persons. *Etting* v. *Marx,* 4
Fed. 673.

It is evident that this case belongs to the class where a
court of equity assumes the untrammeled prerogative of de-
ciding, independent of any statute of limitations, whether the
complainant has used such diligence in exhibiting his demand
as the nature of the particular case required. *Etting* v. *Marx,*
4 Fed. 673; Wood on Limitation, secs. 58, 59. And this doc-
trine has been steadily adhered to in a great variety of cases.
*Harwood* v. *Cincinnati R. R. Co.,* 17 Wall. 78-81; *Twin Lock
Oil Co.* v. *Marbury,* 91 U. S. 587, 594; *Badger* v. *Badger,* 2
Wall. 87-96; *Marsh* v. *Whitmore,* 21 Wall. 178-185; *Sullivan*
v. *Portland and Kennebeck R. R. Co.,* 94 U. S. 806-812;
*Wagner* v. *Baird,* 7 How. 235; *Smith* v. *Thompson,* 7 Gratt.
(Va.) 112, 54 Am. Dec. 126, and notes; *In re Lord,* 78 N. Y.
111; 2 Perry on Trusts, sec. 870; Story's Equity Pleadings,
813; *McQuiddy* v. *Ware,* 20 Wall. 14-20.

"Any irregularity in a sale which renders it voidable will
be deemed to be waived if it is not taken advantage of within
a reasonable time and before innocent parties acquire rights."
2 Jones on Mortgages, sec. 1674; *Hamilton* v. *Lubukee,* 51 Ill.
415, 99 Am. Dec. 562; *Rigney* v. *Small,* 60 Ill. 416.

It is suggestive to note the increase of the value of this
property during the inaction of the complainant (about four
years), from $6,801.25 (the price at a judicial sale) and
$125,000, at the time of filing this suit.

PORTER, J.—The bill in this case sets forth that plaintiff is
a resident of Maricopa County; that some of defendants re-
side in same county, and others in places outside the terri-
tory; that one Jonathan M. Bryan, on or about the twentieth
day of August, 1883, died intestate, and at his death was the
owner, seised and possessed, of several tracts of land described
in the bill, all situated in the county of Maricopa; that on or

about the twenty-fourth day of September, 1883, letters of administration upon the estate of Jonathan M. Bryan, deceased, were issued by the probate court of Maricopa County to M. W. Kales, defendant herein; that during the life-time of Bryan he executed to Kales certain promissory notes, for the security of the payment of which he also executed and delivered to Kales a mortgage on all the real estate described in the bill; that said Kales, without presentation for allowance of his debts in the probate court, commenced an action in the district court of the second judicial district for Maricopa County in his own proper person and name, and in his individual capacity, against himself in his representative capacity as administrator, and made answer to the complaint in such representative capacity. Whereupon, on the ninth day of October, 1883, a judgment of foreclosure was made and entered, and on the eighth day of November, 1883, the district court made an order of sale of said premises; that in pursuance thereof sales were made of the different parcels of the land, the defendant Robert Garside being the purchaser of one piece, M. W. Kales of two other separate pieces, and defendant William Gilson of another portion; that after the sales, and before the making of any deeds by the sheriff, Kales sold one quarter section to J. T. Simms, and the certificate of purchase was set over to Simms; that Kales, before the making of any deed, assigned to defendant D. H. Pinney block 98 of the city of Phœnix, it being a part purchased by Kales at sheriff's sale; that on June 16, 1884, the sheriff executed and delivered to Garside a deed of the part he bought, and that Garside, on May 27, 1887, sold the same to defendant J. De Barth Shorb; that on June 10, 1884, the sheriff executed and delivered a deed to Simms, as assignee of the certificate of purchase from Kales, the parcel of land so purchased by him; that defendant Simms, on February 28, 1887, sold the same to defendant George T. Brassius, who subdivided the same into blocks and lots, with streets running through said property, which is now known and designated as "Central Place"; that Brassius sold a lot therein to John W. Jeffries on May 3, 1887, and on May 5, 1887, sold another lot to defendant Henry W. Ryder; that on June 19, 1884, the sheriff executed a deed to defendant William Gilson for the part purchased

by him, who on April 6, 1886, sold the same to defendant Cordelia L. Beckett; that on the 16th day of June, 1884, the sheriff executed a deed to D. H. Pinney, who on the 10th day of September, 1886, sold a portion thereof to defendant the Bank of Napa, Cal., and that said Pinney, on November 18, 1886, conveyed another part of said block to defendant F. Q. Story, who thereafter sold the same to defendant M. H. Sherman, who is now in possession of the same. The bill further states that, at the time of the death of said Jonathan M. Bryan, Vina Bryan was the wife of Bryan, and did survive him without issue, and said Bryan left no descendants; that all of the property was community property, and that she thus acquired title to the property, and so held the same, until the twenty-ninth day of June, 1887, when she conveyed the same to plaintiff, Thomas J. Bryan, for a good and valuable consideration. The bill alleges that the price bid and paid for each respective piece of property was an inferior price, and less than each was worth in open market; that of all the facts so alleged the defendants, and each of them, had full notice; that the defendant D. H. Pinney was the judge of the district court, and acted as such in all the proceedings had in said action, and was the judge of said court at the time of the assignment of the certificates of sale to him. It is alleged that the premises are of the value of $125,000. The prayer of the bill is that all the proceedings made by the district court in the action where M. W. Kales was plaintiff and M. W. Kales was administrator be annulled, and the sales and certificates of sale be declared void, and the different parcels of the property conveyed, or attempted to be conveyed, be decreed to have been received with notice and in trust for Vina Bryan and her grantee, this plaintiff; that it be decreed that each respective part be decreed to be held in trust for this plaintiff, and that each of the defendants claiming to own any portion of said land by each, respectively, do convey to the plaintiff; that they be enjoined from selling the same. The defendant demurred for several causes, among them that the bill is insufficient to require him to answer thereto. The district court sustained the demurrer, because of laches in not bringing this action sooner, allowing plaintiff to amend his bill so as to show that there were no laches,

which plaintiff declined to do, and appealed to this court. All of this property was sold at a judicial sale. The price paid in the aggregate, as shown by the bill, amounted in round numbers to $5,000. It is now alleged to be worth $125,000.

It appears that the grantor of plaintiff stood by and saw all this property sold, and had a right to redeem the same in six months after the sale; that her residence was in Maricopa County, at the death of her husband, and its continuance will be presumed to be there, the contrary not having been alleged; that there was no action brought to set aside the judgment; that from the eighth day of November, 1883, till the ninth day of June, 1887, nearly four years, she saw the property greatly enhancing in value, saw it sold time and time again, then sells it to the plaintiff, who now comes into a court of equity and asks a cancellation of all those sales.

If the bill had shown, and which plaintiff was allowed to show, that any disability existed on the part of any one having an interest in the property at the time of sale, we would grant the prayer of the bill. No such disability being shown, can we think of allowing the party who has so long slept upon her rights to divest the present owners of their valuable property?

It may be argued that these parties buying property which had been sold under a decree of court should have looked into the validity of the judgment; that they, seeing an action of M. W. Kales against M. W. Kales as administrator, should have gone further, and inquired if they were the same persons. Granting that,—and upon which we express no opinion,—equity requires that the action in equity should have been sooner commenced. It is true that in an action at law under the statute five years to commence an action is allowed.

In the case of *Harwood* v. *Railroad Co.*, 17 Wall. 78, "Harwood and others, representing that they were stockholders in the Cincinnati and Chicago Railroad, filed on the 25th of December, 1865, a bill in the district court against the Air-Line Railroad Company and others, to vacate a decree rendered in the same court in the early part of the year 1860, in a suit by George Carlisle as trustee of a second mortgage on the road for the benefit of a certain second issue of bonds against the said Cincinnati and Chicago Railroad Company.

The bill in the case at bar alleged fraud and collusion in that suit between Carlisle and his confederates and certain other persons, lessees of the road, and in its possession, and who had agreed to pay the interest on the mortgages. It alleged that by the concurrence of these several parties the road had been allowed to lose credit, and that the payment of interest on its second mortgage bonds was willfully neglected in order that the property might be sold; that this arrangement had been carried out, and that the road had been sold and purchased in by the conspirators for about $25,000, when it was really worth $2,000,000 above a first mortgage of the same sum to which it was subject, and that the stockholders in the original road were injured by this collusive and fraudulent sale."

Let us read a part of the opinion of the supreme court, and see if it does not exactly fit the case before us. The court says: "We are of the opinion, also, that there has been too great delay in initiating this suit, and that no sufficient excuse is given for it. The sale was made five years before the commencement of this suit, and it is fairly to be inferred from the bill that the plaintiffs were aware of the proceedings as they progressed. Their knowledge of the mortgage sale is expressly admitted. The allegation of ignorance is, in general terms, of the fraudulent acts and arrangements. They do not allege when they acquired the knowledge, nor give a satisfactory reason why it was not sooner obtained. For aught that appears, they have slept upon their knowledge for several years. Without reference to any statute of limitations, the courts have adopted the principle that the delay which will defeat a recovery must depend upon the particular circumstances of each case. This case does not show a sufficient degree of diligence to justify the overthrow of a decree of foreclosure, under which new rights and interests must necessarily have arisen." See, also, *Diefendorf* v. *House,* 9 How. Pr. 243; *The Key City,* 14 Wall. 653.

If in any case "the principle that the delay which will defeat a recovery" will apply, it is the one at bar,—the presence of the grantor of plaintiff, seeing improvements on the property; seeing it first gradually improving from year to year, and then daily enhancing in value, and, when the "boom"

was reaching its acme, selling to the plaintiff, who seeks to acquire this property, which sold at public vendue for about $5,000, and is now alleged to be worth $125,000. To recover in such a case would be manifestly unjust, and should have no standing in a court of equity.

The judgment of the district court is affirmed.

Wright, C. J., and Barnes, J., concur.