ELDER DEMPSTER & CO., Limited, v. TALGE MAHOGANY CO.

(Circuit Court of Appeals, Fifth Circuit. February 17, 1919.)

No. 3320.

1. ADMIRALTY ⊜34—LACHES.

While courts of admiralty are not governed by any statute of limitations laches or delay in judicial enforcement of maritime claims constitutes a valid defense, where the circumstances are such that it is to be inferred that defendant was prejudiced thereby, because of it depriving him of evidence and the means of effective defense.

2. ADMIRALTY ⊜34—LACHES.

In absence of excuse or explanation, delay of five years, after explicit denial of liability because of no disclosure of fault as to claim filed, in filing libel, counting on faults of vessel for logs intended for cargo going adrift from alongside ship anchored, some distance from shore, at Axim, off west coast of Africa, *held* laches constituting valid defense; the occurrence being such that knowledge of it was likely to be confined to the officers and crew and persons bringing the logs to the ship.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Libel by the Talge Mahogany Company against Elder Dempster & Co., Limited. Decree for libelant, and defendant appeals. Reversed, with directions.

Henry P. Dart, Jr., of New Orleans, La. (Henry P. Dart, Benjamin W. Kernan, and Benjamin W. Dart, all of New Orleans, La., on the brief), for appellant.

Edwin T. Merrick and Wm. J. Guste, both of New Orleans, La. (Merrick, Gensler & Schwarz, of New Orleans, La., on the brief), for appellee.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

---

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WALKER, Circuit Judge. This was a libel in personam to recover the amounts of alleged expense to the libelant of recovering 30 mahogany logs, and of the alleged value of 21 other such logs which were lost; it being alleged that both the logs recovered and those lost went adrift, between September 23, 1910, and October 15, 1910, after they were delivered alongside the ship chartered by the libelant to carry a cargo of logs from Axim, on the west coast of Africa, to New Orleans. The libel charged that the logs went adrift because of faults chargeable against the ship; the faults alleged being that the ship was anchored too far from shore, that the captain required more logs to be brought out each day while the loading was in progress than could be taken aboard during the day of their delivery alongside the ship, and that there was a lack of proper watch during the nights when the logs went adrift. The libel was filed April 22, 1916. The charter party, which was made a part of the libel, contained a provision requiring the cargo to be "delivered alongside of the vessel, where she can load, * * * always safely afloat within reach of her tackles." The delay in filing the libel was duly set up as laches, such as to bar the action.

Before the filing of the libel the libelant had asserted no claim based on the logs going adrift further than was disclosed by the following occurrences: On February 17, 1911, a firm of lawyers in New Orleans addressed to the respondent (the appellant here) a letter stating that they had received for collection a claim of the libelant for the loss of 21 logs shipped by the respondent's steamer, costing the sum of $500, and the recovery of 30 logs allowed to go astray, the recovery of which cost the libelant $245. In the reply of the respondent's agents to that communication, dated February 18, 1911, they said, after stating the contents of the communication replied to:

"We have never been presented with the claim by the Talge Mahogany Company. We do not know anything about any such claim, as the Talge Mahogany Company have never presented us with one. If you wish to take proceedings for the recovery of this money, you are at liberty to do so. If you think this action is necessary, please communicate with our attorneys, Messrs. Dart & Kernan.

"We certainly will not pay any claim until we have some evidence that we are obligated to pay, or have caused other people to suffer damages that are claimed."

In a letter of the libelant, dated February 23, 1911, and adressed to the respondent at New Orleans, it stated merely the inclosure of an invoice of which the following is a copy:

"The Talge Mahogany Company.

"Indianapolis, Ind., Jany. 31, 1911.

"Sold to Elder Dempster & Co., Ltd., New Orleans, La.:

| | |
|---|---:|
| Recovering 10 mahogany logs | $ 50.00 |
| Recovering 20 mahogany logs | 195.00 |
| Lost—21 mahogany logs at $25.64 | 538.44 |
| | $783.44 |

"All the above logs went adrift from alongside the S. S. Andoni while loading at Axim, Sept. 23–Octr. 15, 1910."

On June 8, 1911, respondent's agents at New Orleans, after having communicated with their principal in Liverpool, wrote a letter to the libelant, containing the following quotation from a letter of the principal:

"We are duly in receipt of your letter of the 1st inst., inclosing claim for $783.44, which the Talge Company have rendered to you for loss of certain logs whilst the Andoni was loading at Axim in Sept./Oct. last. However, we cannot admit this claim, because our steamer cannot be held for loss or cost in recovering logs, unless she herself had actually signed for them, and this we do not suppose is the case."

That quotation was followed by the following statement in the letter of the agents:

"If you have not got any receipts for the logs in question, we think that it is not reasonable to expect that we can get Liverpool to assume the responsibility for loss of logs whilst in your possession."

Nothing further occurred between the parties until the libel was filed as above stated. Evidence adduced indicated that when, in consequence of the filing of the libel, the respondent had occasion to get the testimony of the officers and crew of the chartered ship in reference to the circumstances of the alleged delivery and going adrift of the logs, it was unable to do so because the officers and crew had long before that time left the respondent's service, and none of them could be located.

After the respondent's explicit denial of liability, based upon the absence of any disclosure of fault chargeable against it, more than five years elapsed before the filing of the libel, which, so far as appears, was the first assertion of any fault chargeable against the respondent which would make it liable for the alleged damage and loss. Until the respondent in some way was notified or informed that fault or negligence with reference to the logs going adrift was imputed to it or the ship, there was no occasion for it to seek evidence to meet or rebut that imputation. Its response to a demand which was made in such a way as not to indicate that the claim had any validity amounted to an invitation to the libelant to assert in a proper way whatever claim was relied on. Under the circumstances, a natural result of the libelant's failure for more than five years so to assert its claim as to indicate to the respondent that there was any need for it to seek evidence to show the invalidity of the claim was a loss by the respondent of the opportunity of adducing evidence which it may be supposed would have been available to it, if the claim had been properly asserted with reasonable promptness. There is an absence of any showing of an excuse or explanation of the protracted delay in bringing suit. Continuously from the time of the occurrence in question the respondent had agents resident in New Orleans, and it could have been sued there, and funds in the hands of such agents attached, at any time after the alleged claim is asserted to have accrued.

[1, 2] While courts of admiralty are not governed by any statute of limitation, laches or delay in the judicial enforcement of maritime claims constitutes a valid defense, where the circumstances are such that it is to be inferred that the party proceeded against was prej-

udiced by the delay because of it having the effect of depriving him of evidence and the means of effectively defending himself. The Key City, 14 Wall. 653, 20 L. Ed. 896; Pacific Coast S. S. Co. v. Bancroft-Whitney Co., 94 Fed. 180, 36 C. C. A. 135. Coburn v. Factors & Traders Ins. Co. (C. C.) 20 Fed. 644. In the instant case the claim asserted grew out of circumstances attending the delivery and loading of a cargo of logs intended for a vessel anchored some distance from the shore at Axim. The occurrence was such a one that knowledge of it was likely to be confined to the officers and crew of the vessel and the persons who acted for the owner of the logs in bringing them out from the shore. It well may be supposed that the details of such an occurrence would not long be kept in mind by participants in it, who were unaware of the existence of any question or controversy in regard to it. A long-continued failure of the cargo owner to make any disclosure of a claim that the ship was chargeable with faults in such a transaction is likely to result in the shipowner losing evidence, which would have been available if the claim had been promptly made, even if the witnesses on whose testimony the shipowner might be expected to rely remain alive and within reach. But when a party's reliance is on the testimony of the seafaring men composing the officers and crew of a freight-carrying ocean vessel, it well may be expected that all or a material part of that testimony will be unobtainable, if the occasion of seeking to secure it does not arise for more than five years after the occurrence in question. The conclusion is that the delay in filing the libel was under such circumstances that it involved prejudice to the party proceeded against, and that it amounted to such laches as constitutes a valid defense to the claim asserted.

It will be added that on the testimony of the two employés of the libelant who were witnesses in its behalf it is, to say the least, questionable whether the logs which went adrift were ever in the custody or at the risk of the ship. The testimony indicated that the logs brought out in rafts remained in charge of the libelant's employés until they were placed, one or more at a time, within reach of the ship's tackle, and that the logs which the evidence showed went adrift were never so placed.

The decree appealed from is reversed, with direction to dismiss the libel.

Reversed.