## THE GRACE DARLING.

District Court, D. Massachusetts. March 31, 1927.

No. 3601.

1. Maritime liens ⬿50—Lien against vessel will not be enforced against bona fide purchaser without notice after reasonable time.

A maritime lien, asserted against a vessel which has passed into possession of a bona fide purchaser, who was ignorant of the lien and had no reasonable opportunity to discover it, will not be enforced after the lapse of a reasonable time within which the lienor might have proceeded.

2. Maritime liens ⬿50—Lien for supplies held not enforceable against bona fide purchaser of vessel after delay of 15 months.

Suit to enforce lien for supplies furnished to a fishing schooner, brought 15 months after the account was due and eight months after sale of the schooner to a bona fide purchaser, who had no knowledge of the lien, though he made inquiries and examined the records, held barred by laches.

In Admiralty. Suit by the Mexican Petroleum Corporation against the schooner Grace Darling. Libel dismissed.

James A. Hatton, of Boston, Mass., for libelant.

Charles S. Bolster and Blodgett, Jones, Burnham & Bingham, all of Boston, Mass., for claimant Bonney.

BREWSTER, District Judge. This is a libel brought to enforce a maritime lien for supplies furnished the schooner Grace Darling between April 17, 1925, and September 26, 1925.

On April 22, 1926, the schooner was sold to a bona fide purchaser, who, at the time of the purchase, had made inquiries of the broker who made the sale, and who had examined the records at the collector's office of the port of Boston. As a result of this investigation the purchaser learned that the only incumbrance upon the schooner was a mortgage for $5,000. This was discharged at the time of the transfer. The purchaser had no knowledge of the libelant's maritime lien. It appeared in evidence that the seller had represented to the broker that there were no outstanding claims against the vessel, and that this information had been communicated to the purchaser before the sale.

The libel was brought December 21, 1926. The only question presented is whether the lien for supplies should now be enforced against a bona fide purchaser of the vessel.

[1] The law governing the rights of the parties to these proceedings is well settled: It is that, whenever a maritime lien is asserted upon a vessel which has passed into the possession of another, a bona fide owner, who was ignorant of the existence of the lien, and who had no reasonable opportunity to discover it, the lien will not be enforced after the lapse of a reasonable time within which the lienor might have proceeded. The Key City, 14 Wall. 653, 20 L. Ed. 896; Norfolk Sand & Cement Co. v. Owen (C. C. A.) 115 F. 778; The No. 34 (D. C.) 13 F.(2d) 927.

In The Key City, supra, Mr. Justice Miller observes that "no arbitrary or fixed period of time has been, or will be, established as an inflexible rule, but that the delay which will defeat such a suit must in every case depend on the peculiar equitable circumstances of that case."

[2] The question therefore comes down to this: Whether the libelant exercised reasonable diligence in enforcing its lien. On this aspect of the case I find that the Grace Darling was a fishing vessel, and was used dur-

ing the fishing season of 1925 by its, owner, Capt. James C. Ellis. The libelant furnished kerosene, gasoline, and oil during the season of 1925. The date of the last delivery to the schooner was September 26, 1925. The owner had paid $50 on account, leaving a. balance then due for these supplies of $871.88. Apparently no effort was made to collect this balance until the following May, when a representative of the libelant notified Capt. Ellis that the Mexican Petroleum Corporation had discontinued its "fish pier" business. The account was then talked over, and Capt. Ellis said that, when he had made a few fishing trips, he would pay, but no payments were forthcoming until September, 1926, when another $50 was paid on account. Thereafter there was some talk regarding a reduction of the amount due, and the libelant offered slight concessions; but no further payments were made until December 1, 1926, when Capt. Ellis paid $100 on account, leaving a balance then due of $721.88, and on December 26, 1926, no further payments being forthcoming, this libel was brought.

In the meantime Capt. Ellis had intimated to representatives of the libelant that he might have to sell one of his vessels, and early in 1926 had notified them that he was not sailing the Grace Darling. The libelant had made no inquiries nor investigation to ascertain the whereabouts of the schooner, and during the time intervening between September, 1925, and December, 1926, with the exception of the occasions when the schooner was out on, fishing trips, she was tied up· either at Boston or Gloucester, within this jurisdiction. No reasons appear why the libelant could not at any time have instituted proceedings to enforce its maritime lien. It did not learn of the sale until shortly before the libel was brought, and when it had decided to bring the libel it had no difficulty in locating the schooner.

It thus is made apparent that the lien for the full amount attached in September, 1925; that the vessel was sold 7 months after the lien attached, to a bona fide purchaser who was ignorant of the lien, and that 15 months after the lien attached and 8 months after the sale the libel was brought. In the meantime, nothing had occurred to prevent the libelant from proceeding to enforce its lien in the courts, nor was it lulled into a sense of security by any act of Capt. Ellis. Its delay in proceeding may have been due to neglect, indifference, or a desire to deal liberally with the captain. Whichever of these causes predominated, it still remains a fact that the libelant had a reasonable opportunity to enforce its lien before the sale of the schooner. In The Lyndhurst (D. C.) 48 F. 839, it is said that "the period of limitation is a reasonable opportunity to enforce a lien." I cannot escape the conclusion that the period of limitation thus defined had expired some time before the libel was brought. In the case of Norfolk Sand & Cement Co. v. Owen, supra, a delay of 15 or 16 months in bringing proceedings was held unreasonable.

I therefore find and rule that in the circumstances of the case the libelant has been guilty of such laches as will bar its right to enforce its claim of lien to the detriment of a bona fide purchaser for value without notice thereof.

Libel dismissed.