■

## THE AJAX.

District Court, D. Maine, S. D. August 20, 1929.

Herbert J. Connell and Nathan W. Thompson, both of Portland, Me., for libelant.

Frederick R. Dyer, of Portland, Me., for intervener.

PETERS, District Judge. The Fidelity Trust Company, by assignment from the original mortgagee, became the owner of a preferred mortgage for some $33,000, given by the P. H. Doyen Company, a corporation, in October, 1925, covering the steam lighter Ajax. The mortgage not having been paid, the trust company brought this libel to foreclose it, and the lighter was seized in October, 1928, subsequently sold, and the proceeds of the sale paid into court. After this had occurred Philip H. Doyen, Jr., filed a petition to intervene, which was granted, and claims a prior lien on the lighter for balance of wages, amounting to $8,491, alleging that he had served as hoisting engineer on the vessel from October, 1921, to October, 1928, when the vessel was seized, at wages of $150 per month, a part only of which had been paid. It is not claimed by the plaintiff that the amount due Doyen, Jr., from the Doyen Company is not substantially as stated, but it is vigorously contended that Doyen, Jr., has no rights which he should be allowed to assert as against the mortgagee, an innocent third party without notice.

It appears that when this mortgage was given, and for some time previously during financial dealings between the Doyen Company and the United States Trust Company, predecessor in title to the plaintiff, Doyen, Jr., was clerk and director in the Doyen Company, a corporation owned exclusively by the Doyen family, the senior Doyen being the principal owner and manager, his wife and this son being the only other directors besides himself. Only one share of stock was issued to the younger Doyen, evidently to qualify him as director. I find nothing in the contention that he was not actually a stockholder (and therefore not a legal director), on the ground that the certificate had not been detached from the stock book. The certificate could have been taken at any time by young Doyen, and he acted as director by participating in meetings of the board.

When the mortgage in question was authorized by the directors, young Doyen was present at the meeting as a director and acting as such, according to the record and according to the best recollection of young Doyen himself. At that time, when the United States Trust Company advanced $33,600 to the Doyen Company and took a 60-day note secured by a preferred mortgage on the lighter, young Doyen, according to his claim, had a large amount due him for wages. If he had any intention of claiming a maritime lien for this, he should have disclosed the fact to the trust company before he and his father and mother as the other directors permitted the trust company to advance to them this large sum on a chattel mortgage. It is not correct to say that a director can never have a lien on the corporate floating property, but it is unquestionably true that his claim to it cannot be allowed under the circumstances as stated. The general principles of estoppel, as well as the reasoning in cases in this district and elsewhere, cited by counsel for plaintiff, prevent this. The Frank Brainerd (D. C.) 3 F.(2d) 664; The Queen of St. Johns (C. C.) 31 F. 24; The Morning Star (D. C.) 1 F.(2d) 410.

The same principle is indirectly involved in the attempt of the intervener to take all payments made to him during the seven years his account has been running and apply them to the payment of that part of his bill that was incurred prior to the date of the mortgage. This would be simply paying the invalid part of the lien claim at the expense of the mortgagee, if the rest of the account should be given the lien status the intervener claims for it.

The only considerable question involved here is whether the intervener by laches, under the circumstances and relationships disclosed, has lost his possible right to a maritime lien for that part of his claim incurred since the date of the mortgage.

That such a claim can be so lost is unquestionably true.

It was said in the case of The Lillie Mills, Fed. Cas. No. 8,352: "When the rights of third persons have intervened, the lien will be regarded as lost, if the person in whose favor it existed has had a reasonable opportunity to enforce it, and has not done so."

This is the well-settled rule of the admiralty.

The law seems to be well settled that as against innocent third parties a person claiming a maritime lien must proceed to enforce it within a reasonable time or lose his right. The Falcon (D. C.) 19 F.(2d) 1009; The Grace Darling (D. C.) 18 F.(2d) 587.

When it comes to applying the rule, it is evident that the diligence required must accord with the circumstances of each case and the existing opportunities, "and a court of admiralty will refuse its aid in the enforcement of the lien if, under the same circumstances, a court of equity would do so; a change of circumstances affecting the rights and conditions of the parties being more considered than mere lapse of time." Norfolk

Sand & Cement Co. v. Owen (C. C. A.) 115 F. 778; The Key City, 14 Wall. 653, 20 L. Ed. 896.

In the instant case, assuming that payments to Doyen, Jr., by his father are credited to current wages, we have about $5,000 for which a lien is claimed for balance of unpaid wages from May, 1925, to October, 1928. During all this time the intervener was living at home with his father, was charged no board, drew money more or less when he wanted it, and as a director, if not otherwise informed, was charged with knowledge that this mortgage was not being reduced, and for six months, at least, before the foreclosure (according to his own statement) knew that the Doyen Company was financially embarrassed. The vessel was available for proceedings to enforce his lien during all this time.

There can be but one answer to the question whether the intervener had a reasonable opportunity to enforce his lien.

The situation of this claimant, a director of the corporation giving the mortgage, a member of the family of its principal owner and manager, for some time drawing money on account or increasing his lien claim at will, knowing the circumstance of the mortgage, the fact that the vessel was left in the possession and use of the Doyen family, that the mortgage debt was long overdue and increasing all the time, while business was getting dull, all added to his obligation to act promptly in the enforcement of his claim. His inaction for three years and more was to the prejudice of the mortgagee, whose debt was increasing without the knowledge that this secret lien claim existed, much less that it was running up all the time. The equities are strongly with the innocent mortgagee. I regard it as clearly inequitable to permit the intervener to assert his claim as against the mortgage, even if his claim has not been lost entirely.

It should be mentioned that the intervener testified that he looked solely to the credit of the Doyen Company for the payment of his wages. This might not mean that he intended to release all other means of enforcing his claim, but it explains his inactivity during some three years, and indicates that this idea of a lien claim was an afterthought, occurring to him or to some adviser after the financial crash of the company.

The nature of the right to a lien involves the obligation to act without unexcused delay. The situation of this claimant required him to use more than ordinary good faith in his attitude toward this creditor of the corporation.

Under the circumstances disclosed here, a court of equity would refuse its aid in the enforcement of the lien, and a court of admiralty can do no less.

The claim of the intervener to the funds in the custody of the court is disallowed.