**UNITED FRUIT COMPANY, Libelant,**

v.

**THE M. D. WHITEMAN, her engines, tackle, apparel, furniture, etc., and George W. Whiteman, d/b/a Whiteman Towing Company, Respondent.**

No. 2436.

United States District Court

E. D. Louisiana, New Orleans Division.

Nov. 19, 1954.

Phelps, Dunbar, Marks & Claverie, John W. Sims and J. Barbee Winston, New Orleans, La., for libelant.

McClendon & Wheeler and Thomas B. Wheeler, New Orleans, La., for respondent.

WRIGHT, District Judge.

On March 28, 1951, the Tug M. D. Whiteman, in bringing an oil barge, Esso No. 239, alongside the M/V Fiador Knot in the harbor of New Orleans, caused the barge to come in contact with the ship, broaching her hull. On November 2, 1953, libelant, owner of the Fiador Knot, brought this libel for damages. Respondent, owner of the tug, set up the defense of laches and the case was tried on this issue alone.

On the day of the collision, March 28, 1951, respondent participated in a survey of the damage to the Fiador Knot. At that time respondent estimated the damage to be in the amount of $600 to $700. On April 2, 1951, libelant addressed a letter to Esso Standard Oil Company and to respondent advising that the libelant intended to hold both respondent and Esso Standard Oil Company jointly and severally liable in damages. Thereafter respondent received no notice or demand of any kind from libelant until July 17, 1952, when he received a letter from Esso Standard Oil Company, enclosing a copy of a letter dated July 14, 1952, addressed to Esso by libelant, calling upon Esso for payment of the damages to the M/V Fiador Knot in the amount of $3,680.07. Respondent replied directly to libelant contesting the claim on the ground that it was time barred as well as excessive. On August 26, 1952, libelant renewed its demand, and respondent replied on August 28, 1952, renewing his defense of laches.

No further action was taken in the matter until December 18, 1952, when libelant inquired of respondent as to the basis for his defense of laches. On December 31, 1952, proctors for respondent answered, citing authorities in support of his position. Thereafter the matter was dormant for approximately nine months until September 8, 1953, at which time libelant referred the matter to counsel who filed suit on November 3, 1953, some two years and seven months after the collision.

The M/V Fiador Knot was not repaired immediately after the collision on March 28, 1951, but was continued in service until June 10, 1952, at which time she received extensive repairs, including the damage caused by the collision in suit. Before the overhaul of the vessel began, she was again surveyed, to which survey respondent was not invited, and the work was commenced by the Todd-Johnson Dry Docks in the city of New Orleans without submission of specifications for bids.

The testimony shows that the liability insurer of the respondent was not notified of the collision of March 28, 1951 until July 23, 1952. Respondent did not comply with the requirement of his liability policy that the insurer be promptly notified for the reason there was a $1,000 deductible average provision in the policy, and since he estimated the damage to the Fiador Knot to be less than that, there was no occasion for notifying the insurer. Testimony further shows that, should a decree in excess of $1,000 be rendered against respondent, his insurer, in all probability, will refuse to respect its obligation under the policy because prompt notice of the collision was not given.

Under doctrine of laches, no set limitation is placed on the time for

**900**

bringing suit. The Key City, 14 Wall. 653, 81 U.S. 653, 20 L.Ed. 896. Courts of admiralty, however, will apply the statute of limitations of the state in which suit is brought unless equitable reasons exist for not doing so.[1] Morales v. Moore-McCormack Lines, Inc., 5 Cir., 208 F.2d 218; McGrath v. Panama Ry. Co., 5 Cir., 298 F. 303. Where there has been no inexcusable delay in seeking a remedy and where the respondent has not been prejudiced by the mere passage of time, there should be no bar to relief. Gardner v. Panama Railroad Co., 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31. However, the burden is upon the libelant to prove no inexcusable delay and no prejudice to the respondent in order to overcome the defense of laches. Morales v. Moore-McCormack Lines, supra; McGrath v. Panama Ry. Co., supra.

The facts here show that the libel was not filed until two years and seven months after the collision. No serious effort has been made to prove the libelant not guilty of inexcusable delay in seeking its remedy. There is no suggestion that respondent lulled libelant into believing he would accept responsibility for the damage. When demand was first made on him, after the cost of repairs was ascertained, he flatly rejected the demand as time barred and excessive. In spite of this flat rejection of the claim, libelant waited another year and four months before filing the libel.

It also affirmatively appears from the record that the respondent has been prejudiced by the libelant's delay. When respondent first surveyed the damage to the Fiador Knot on the day of the collision, he estimated it would be in the amount of six or seven hundred dollars, well within the deductible amount he would be required to pay under his liability policy. Consequently, he did not give his insurer the prompt notice required in the policy. In fact, the insurer was not notified until over a year after the collision, at which time the insurer advised respondent that the claim was time barred. If this libel is allowed to remain and a decree in favor of libelant results, respondent may very well be stripped of his insurance coverage because of libelant's delay.

Decree for respondent.

---

1. In Louisiana the prescriptive period for bringing tort actions is one year. LSA–C.C. art. 3536.