**Bruce ZITANO**

v.

**F/V DIAMOND GIRL**

**Civil Action No. 96–130B.**

United States District Court,
D. Rhode Island.

May 6, 1997.

Robert Collins, Clinton & Muzyka, P.C., Boston, MA, for Plaintiff.

Mark Freel, Edwards & Angell, Providence, RI, Leo Wold, Gelfuso & Lachut, Inc., Cranston, RI, for Defendant.

## OPINION

FRANCIS J. BOYLE, Senior District Judge.

Plaintiff Bruce Zitano brought this action to foreclose on a maritime lien against the defendant vessel F/V DIAMOND GIRL, pursuant to Rule C of the Supplemental Rules for Admiralty and Maritime Claims. *See* F.R.C.P. 9. Jurisdiction is founded upon 28 U.S.C. § 1333, which grants original jurisdiction to the district courts in "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). The first issue to be determined is whether the loan made by plaintiff was a "necessary" so as to create a maritime lien against the vessel. If the loan did create a maritime lien, it must be determined whether that lien may be enforced or whether it is barred by the doctrine of laches.

## I. Background

In 1985, the F/V DIAMOND GIRL, a ninety-four foot off-shore lobster boat, was owned by Diamond Girl, Ltd., a corporation. At that time, the vessel was docked at Tiverton, Rhode Island; it is docked presently at Portsmouth, Rhode Island. In late 1985, Gilbert Guimond, president of Diamond Girl, Ltd., negotiated a loan from the plaintiff in connection with the vessel. Simultaneously, the plaintiff was engaged in discussions with Gilbert Guimond's brother and business partner, Richard Guimond, about purchasing Richard Guimond's share of Diamond Girl, Ltd. The purchase of Richard Guimond's share was never completed.

On November 19, 1985, the plaintiff made a loan to Diamond Girl, Ltd. in the amount of $30,000.00, upon agreement of Diamond Girl, Ltd. to repay the same, with interest thereon, at the rate often percent (10%) per annum. Plaintiffs understanding was that the

loan was to be used to pay the monthly insurance premium for the F/V DIAMOND GIRL. Both plaintiff and Gilbert Guimond expected that the loan would be repaid from the profits of the F/V DIAMOND GIRL's fishing efforts. Mr. Guimond contends that the purpose of the loan was to pay the monthly insurance premium for the F/V DIAMOND GIRL and three other fishing vessels owned by Diamond Girl, Ltd., all of which were insured under the same policy. As a result of the loan, the insurance policy was maintained. Only two interest payments were made on the loan, one for $304.14 and the other for $254.82.

In June 1986 plaintiff brought an action in Rhode Island Superior Court against Gilbert Guimond, Richard Guimond, and Diamond Girl, Ltd. to recover the unpaid portions of the principal and interest on the loan. While this action was pending, the F/V DIAMOND GIRL was sold on October 7, 1987, to Gem Fish Corporation for consideration consisting of one hundred dollars and assumption of existing mortgages. One year thereafter, on October 18, 1988, the Rhode Island Superior Court issued an order granting plaintiffs motion for summary judgment as to defendant Diamond Girl, Ltd., but denied it as to defendants Gilbert Guimond and Richard Guimond. The order was not appealed and no judgment was entered. At the time of the order, there were no assets available to satisfy a judgment because Diamond Girl Ltd. no longer existed and its assets, including the F/V DIAMOND GIRL, had been sold. On July 24, 1992, Diamond Girl Fisheries, Inc. purchased the F/V DIAMOND GIRL from Gem Fish Corporation for good and valuable consideration.

Plaintiff testified that he had borrowed the thirty thousand dollars from his father-in-law and has since repaid him. Plaintiff recorded his lien on September 3, 1992, more than a month after the sale of the vessel to Diamond Girl Fisheries, Inc. Three and one-half years later, this action was brought.

Plaintiff testified that in 1987, he learned of the first sale of the F/V DIAMOND GIRL. He also testified that he "probably" became aware in 1992 of the second transfer of the vessel.

Jean LeComte is the president of Diamond Girl Fisheries, Inc., the current owner of the vessel. He testified that he did not know the plaintiff personally and had no knowledge of the plaintiffs lien against the F/V DIAMOND GIRL when the vessel was purchased from Gem Fish Corporation in July 1992.

Gilbert Guimond was the President of Diamond Girl, Ltd. and it was he who negotiated the loan from plaintiff In a response to an interrogatory in the state court action, submitted under oath, he stated that the purpose of the loan was to pay insurance premiums for F/V DIAMOND GIRL. From the time of this sale to the present time he has acted as "shore boss" for the vessel, ordering provisions, supervising and providing maintenance, paying her bills and arranging the sale of her catch. He is paid a salary for his services. In June 1993, he paid fifty thousand dollars to acquire a 25% interest in Diamond Girl Fisheries, Inc.

## II. Insurance as a Necessary for the Operation of the Vessel

46 U.S.C. § 31342 in part states that a person "... providing necessaries to a vessel ..." has a maritime lien. 46 U.S.C. § 31342 (1997). This section is a recodification of existing law and is not intended substantively to change maritime law. *Bradford Marine Inc. v. M/V Sea Falcon,* 64 F.3d 585, 588 n. 4 (11th Cir.1995). Plaintiff contends that the loan to purchase insurance was a "necessary" provided to the F/V DIAMOND GIRL so as to create a maritime lien on the vessel. Defendant asserts that the payment of $30,000 was a corporate loan and not a "necessary" so as to create a maritime lien.

A person providing "necessaries" to a vessel on the order of the owner or a person authorized by the owner has a maritime lien on the vessel and may bring a civil action in rem to enforce the lien. 46 U.S.C. § 31301(4), §§ 31341–31343. "Necessaries" generally include any "repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. § 31301(4). Historically, the term "necessaries" did not include loans to purchase insurance as insurance was perceived as being for the benefit of the

owner and not as a benefit to the vessel. There has been a more recent trend, however, including as necessaries goods, services and intangibles that a careful and provident owner would provide to enable a vessel to continue to perform well the functions for which she has been designed and engaged. *Farrell Ocean Services, Inc. v. United States,* 681 F.2d 91, 92–93 (1st Cir.1982); *Payne v. S.S. Tropic Breeze,* 423 F.2d 236, 241 (1st Cir.1970). The Fifth Circuit has held that because insurance is essential to keep a vessel in commerce, it qualifies as a "necessary." *Equilease Corp. v. M/V Sampson,* 793 F.2d 598, 604 (5th Cir.1986). The testimony of Gilbert Guimond establishes that as president of Diamond Girl, Ltd., he had the authority to procure necessaries for the F/V DIAMOND GIRL. He conceded that insurance is reasonably necessary for the operation of the vessel because the lack of insurance would violate mortgage agreements and without insurance "... you can't go to sea." Quite obviously, insurance is an asset that will keep the vessel "active" and is necessary to the "continued operation" of the vessel. The loan, therefore, was used to procure a necessary and plaintiff is entitled to a maritime lien under the Federal Maritime Lien Act. *See Equilease,* 793 F.2d at 604; *Flagship Group, Ltd. v. Peninsula Cruise, Inc.,* 771 F.Supp. 756, 759 (E.D.Va.1991); *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.,* 781 F.Supp. 975, 986 (S.D.N.Y.1991), *rev'd on other grounds,* 982 F.2d 765 (1992).

Although plaintiff is not required under 46 U.S.C. § 31342(a)(3) either to allege or prove that credit was given to the vessel, plaintiff has done so considering the credible evidence presented. In order to prove that the plaintiff had foregone the lien, the defendant would have to show that the plaintiff deliberately intended to look to Diamond Girl, Ltd. or Mr. Guimond's personal credit and forego the valuable lien afforded him by law. *See Equilease,* 793 F.2d at 606; *see also Gulf Oil Trading Co. v. M/V CARIBE MAR,* 757 F.2d 743, 750 (5th Cir.1985). It was the expectation of the plaintiff and of Mr. Guimond that the loan was to be repaid out of the earnings of the vessel, and not the credit of the corporation. The facts substantiate that the plaintiff provided a loan to pay for a necessary—to wit, an insurance premium—for the vessel F/V DIAMOND GIRL, at the request of Gilbert Guimond, who was authorized to secure such necessaries and on the basis that the loan would be repaid from the catch of the vessel. Therefore, the $30,000 loan was not a loan to the corporate owner but was a "necessary" which created a maritime lien against the vessel.

### III. The Doctrine of Laches

A discussion of the defense of laches must begin with *The Key City,* 14 Wall. 653, 81 U.S. 653, 20 L.Ed. 896 (1871). This opinion establishes the doctrines that (1) laches or delay in the enforcement of maritime liens will, under proper circumstances, constitute a valid defense, (2) the delay which will defeat enforcement of a maritime lien must in every case depend on the peculiar equitable circumstances of that case, and (3) the circumstances are to be more rigidly scrutinized where the effort is to enforce a maritime lien against a purchaser for value without notice of the lien. *See Key City,* 81 U.S. at 660.

Jean LeComte, president of Diamond Girl Fisheries, Inc., testified without contradiction that he did not know the plaintiff personally and that he had no knowledge of the plaintiff's lien claim against the F/V DIAMOND GIRL when the vessel was purchased from Gem Fish Corporation in July 1992. Obviously, Gilbert Guimond had such knowledge but in that transaction he had to have been acting as agent for the seller, Gem Fish Corporation. Also, at the time of the sale of the vessel to Gem Fish Corporation, Gilbert Guimond was acting as agent for and president of Diamond Girl, Ltd. Although he acted as shore boss for both Gem Fish Corporation and Diamond Girl, Ltd., at the time of the two sales, he was acting for the seller, an adverse party. As such, Gilbert Guimond's knowledge is not imputed to either purchaser. *See Farland v. T & T Fishing Corp.,* 682 F.Supp. 700, 703 (D.R.I.1988) (the general rule is that the liability of a principal is affected by the knowledge of an agent concerning a matter to which he acts within his power to bind the principal or upon which

it is his duty to give the principal information; the major exception to the rule is that a principal is not liable for such knowledge when the agent acts adversely to the principal); *First Nat'l Bank of Cicero v. U.S.*, 625 F.Supp. 926, 932 (N.D.Ill.1986) (the general rule is that a principal is charged with knowledge acquired by the agent in the course of the principal's business, except when the agent acted adversely to the principal); Restatement, Second, Agency § 282. The evidence establishes that Diamond Girl Fisheries, Inc. is a bona fide purchaser for value without notice of plaintiff's claim.

There are various formulations of the delay rule, when the vessel is, subsequent to the lien arising, transferred to a bona fide purchaser for value without notice of the lien. Thus, it has been said that the "... circumstances should be more rigidly scrutinized." *See The Key City*, 81 U.S. at 660. The claimant must demonstrate "a high degree of diligence" in enforcement of the lien. *The Everosa*, 93 F.2d 732, 735 (1st Cir.1937). The lien is invalid "after the lapse of a reasonable time within which the lienor might have proceeded." *The Grace Darling*, 18 F.2d 587 (D.Mass.1927).

The loan by plaintiff was made on November 18, 1985. This action was brought on March 6, 1996, more than ten years and three months after the loan was made. In the interim, the lien was recorded September 3, 1992, more than six years and four months after the loan was made, In the interval between the making of the loan and the recording of the lien, the vessel was sold twice, on October 7, 1987 to Gem Fish Corporation and on July 24, 1992 to Diamond Girl Fisheries, Inc. Plaintiff had knowledge of each of the sales at or about the times of the sales. The evidence proves that the sale of the vessel to Diamond Girl Fisheries, Inc. was a sale to a bona fide purchaser for value without notice of the lien. In addition, plaintiff had obtained a state court judgment on October 18, 1988 against the former corporate owner of the vessel.

Whatever formulation of the rule is applied, clearly the circumstances, rigidly scrutinized, establish a total lack of diligence in pursuing the claim. There were a series of unreasonable time lapses including more than six years between the time of the loan and the recording of the lien and a lapse of more than ten years between the date of the loan and the date this action was brought. However charitably applied to the plaintiff's claim, the evidence compels the conclusion that it is a fact beyond any doubt the plaintiff has slept too long upon his rights and his claim is barred by laches.

Judgment will enter for defendant for costs.