### THE LIBBIE PURDY.
### No. 768.

District Court, D. Massachusetts.
March 7, 1940.

**68**

Joseph Doyle, of Boston, Mass., for libelant.

Hyman Katz, of Boston, Mass., for George W. Newell.

Howard V. Redgate, of Boston, Mass., for Vincent J. Murphy and others.

Thos. H. Walsh, of Boston, Mass., for claimant.

## BREWSTER, District Judge.

This libel is brought to enforce a lien against the steam tug Libbie Purdy for $353.25. One Hilmar Hansen has claimed the tug as the owner and has impleaded George W. Newell, a former owner, who has defaulted.

In an intervening petition, filed by the M. & R. Construction Company, other liens are claimed.

## Findings of Fact.

1. The libellant owns a wharf in Boston, known as T Wharf, where Newell, as owner of the Libbie Purdy, enjoyed wharfage privileges for which he undertook to pay $20 per month. On April 26, 1938, he owed the libellant $360 for wharfage and also owed it $193.25 for office rent and electric lights. On that day, Newell paid the libellant $200 of which $193.25 was applied in satisfaction of the rent and $6.75 was credited to the amount due for wharfage, leaving a balance due of $353.25, which sum still remains unpaid. I find that at the time of this payment the libellant was free to apply the $193.25 in settlement of the rent account.

2. By bill of sale dated April 25, 1938, Newell sold and transferred the Libbie Purdy to Hansen. In this bill of sale Newell covenanted and agreed that he would warrant and defend the vessel against all persons. Newell received the purchase price of $1,000 in cash, out of which he paid the $200 referred to in the foregoing paragraph. Newell told the libellant that he had sold the boat and had taken a note for the balance and that, when the note was paid, he would pay the balance due the libellant.

On June 24 the libellant sent a bill to Hansen, as owner of the vessel, for the balance. In the meantime a representative of the libellant had communicated with Hansen and had learned that no note had been given. Newell had gone to Nova Scotia, as he says for his health. He was away four months.

3. At the time Hansen bought the tug, he had no knowledge of the libellant's claim or of any other claim upon the vessel. When it was discovered that Newell had left owing the libellant, Hansen requested libellant's attorney to take no action until Newell could be reached. The libel was filed on September 13, 1938.

4. I find that the wharfage was furnished on the credit of the Libbie Purdy.

5. In an intervening petition, filed January 3, 1939, the M. & R. Construction Company alleges—(a) that on June 8, 1936, a lighter owned by the Construction Company was damaged while being towed by the Libbie Purdy; (b) that on September 7, 1936, the same lighter was again damaged while being towed by the Libbie Purdy; and (c) that from March, 1936, to April, 1938, they furnished coal for which the vessel owed $375.

These allegations are denied by Newell, who testified that he had never heard that the lighter had been damaged; that no claim upon him had ever been presented for such damage, and that he had obtained coal upon two different occasions for which he had paid by towage.

I find that the evidence before me is not sufficient to sustain the plaintiff's burden of proving the allegations of its libel.

### Conclusions of Law.

1. At the time of the sale of the Libbie Purdy, the libellant had a valid maritime lien upon the vessel for the sum of $353.25.

I have found upon adequate evidence that the wharfage was furnished upon the credit of the vessel, and that the libellant properly applied $193.25, received from the former owner, to the settlement of its claim for rent. There are no facts shown which would warrant the conclusion that the libellant had at any time waived its lien.

2. The libellant's lien was not lost by reason of laches.

There is no doubt that the rule is well established in admiralty that the rights of subsequent bona fide purchasers for value, without notice of the claim which is sought to be enforced in admiralty, are an important factor in deciding as to the staleness of such claim, and this is particularly true if the libellant had notice of the subsequent sale. The Key City, 14 Wall. 653, 20 L.Ed. 896; The Grace Darling, D.C., 18 F.2d 587; The Hughes Line, D.C., 29 F. 2d 629; 2 Corpus Juris Secundum, Admiralty, § 87, page 175.

In the instant case, the libellant knew of the sale of the tug, and the purchaser was not aware of the lien until shortly after the sale. These circumstances call for a somewhat severe limitation upon the reasonable time within which the libellant should institute proceedings to enforce its lien but, in view of the fact that the delay, for the greater part, was at the request of the purchaser Hansen, I am unable to reach the conclusion that the libellant failed to use due diligence. It would appear that the libel was brought a little over one month after Newell returned to Massachusetts and a little over four months after the sale.

3. The intervening petitioners do not establish any claim upon the vessel.

I have found that they have failed to prove the allegations of their petition, but if they had done so there could be no doubt that any lien which they may have acquired had been lost by reason of their failure to act before January 3, 1939, when their petition was filed, since the rights of a third party had intervened.

4. With respect to Hansen's petition impleading Newell, I rule that, as between Hansen and Newell, the latter is liable to Hansen for breach of the covenant of warranty contained in the bill of sale executed when Newell sold the tug.

Libellant is entitled to a decree against the Libbie Purdy for the amount of its lien, and Hansen is entitled to appropriate relief against Newell upon his petition filed under Rule 56 in admiralty, 28 U.S.C.A. following section 723.